# NORTHERN PACIFIC RAILROAD COMPANY *v.* TRAILL COUNTY.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF DAKOTA.

Submitted November 17, 1885.—Decided December 7, 1885.

The provisions in the act of July 17, 1870, 16 Stat. 291 (on page 305), that the lands granted to the Northern Pacific Railroad Company by the act of July 2, 1864, 13 Stat. 365, shall not be conveyed to the company or any party entitled thereto, "until there shall first be paid into the treasury of

the United States the cost of surveying, selecting, and conveying the same by the company or party in interest," exempts these lands from State·or Territorial taxation until such payment is made into the treasury.

The Northern Pacific Railroad Company has acquired no equitable interest in the lands so granted to it, by reason of completing its road and thus earning the granted lands, which is subject to State or Territorial taxation before such payment is made into the treasury of the United States.

When an act granting public lands to aid in the construction of a railroad provides that patents shall issue from time to time, as sections of the road are completed, but reserves to Congress the right at any time " to add to, alter, amend, or repeal this act," " having due regard for the rights of the company," Congress may, without violating the Constitution of the United States, by subsequent act passed before any of the road is constructed, or any of the land earned, require the cost of surveying, selecting, and conveying the land to be paid into the treasury of the United States before the conveyance of the granted lands to any party entitled thereto.

The principles on which *Railway Co.* v. *Prescott*, 16 Wall. 603, and *Railway Co.* v. *McShane*, 22 Wall. 444, were decided, are restated, so far as they are applied to this case.

Suit to enjoin the collection of taxes levied upon lands of plaintiff in error. A jury being waived, the court made a finding of facts of which the following are the material ones, in view of the opinion of the court.

First. That the plaintiff is a corporation duly organized and existing under that certain act of Congress, approved July 2, 1864, entitled " An Act granting land to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific coast, by the northern route, and under those certain subsequent acts and joint resolutions of Congress relating to the same subject-matter."

Second. That in and by the said act of July 2, 1864, among other things, it is provided as follows :

" And be it further enacted, That there be, and hereby is, granted to the Northern Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line, . . . alternate sections of public land, not mineral, designated by odd numbers, to the amount of 20 alternate sections per mile on each side of said railroad line as said company may adopt, through the territory of the United States, and 10 alternate sections of land per mile on each side of said railroad whenever it passes through any

State," etc.    Then follow the conditions subsequent to be per-
formed by the said railroad company to give it a complete title
to the said lands, and to a patent as the evidence of such title.

Section 20 is as follows : "And be it further enacted, That
the better to accomplish the object of this act, namely, to pro-
mote the public interest and welfare by the construction of
said railroad and telegraph line, and keeping the same in work-
ing order, and to secure to the Government at all times (but
particularly in time of war) the use and benefits of the same
for postal, military, and other purposes, Congress may at any
time, having due regard for the rights of said Northern Pacific
Railroad Company, add to, alter, amend, or repeal this act."

By an act of Congress approved July 15, 1870, among other
things appropriating money for the survey of the public lands
within the limits of the land grant of the Northern Pacific
Railroad Company, it is provided, "that before any land
granted to said company by the United States shall be con-
veyed to any party entitled thereto under any of the acts in-
corporating or relating to said company, there shall first be
paid into the Treasury of the United States the cost of sur-
veying, selecting, and conveying the same by the said company
or party in interest."

Third.  That under and in pursuance of said several acts and
resolutions of Congress the plaintiff has built and caused to be
built and put in operation a continuous line of railroad and
telegraph, extending from the waters of Lake Superior, at
Duluth, in the State of Minnesota, westerly, across the said
State and across the Territory of Dakota, to and beyond the
Missouri River, and of the character and materials specified in
the said acts ; and everything has been done by the said rail-
road company required by the terms of the grant, to enable
the said company to acquire a complete and perfect title to
the lands in controversy in this action, except as respects the
payment of the costs of survey, &c., required by the act of July
15, 1870, above mentioned.  All that part of the said railroad
within the Territory of Dakota has been located and built since
July 15, 1870.  The government of the United States, since
the passage of the said act of Congress of July 15, 1870, has

caused the lands described in the complaint to be surveyed at its own expense, no part of which has ever been repaid it by said company. The patents for the said lands described in the complaint, or any of them, have never been issued to the said railroad company, or to any person for said company, and the government refuses to issue said patents until the payment for survey and selecting the said lands, as above mentioned, and required by said law of 1870, has been made.

Fourth. That the lands mentioned and described in the schedule annexed to the plaintiff's complaint, and made a part thereof, were, at the time said acts were passed, and the said railroad located through the Territory of Dakota, a part of the public domain of the United States, and not any part of the right of way mentioned in said act, and had never been sold, reserved, granted, or otherwise appropriated, except as above mentioned, and were free of pre-emption and other rights, and were situated within a distance of 40 miles of the line of the plaintiff's said railroad.

Fifth. That in the year 1880 the officers of the said county of Traill, authorized by the laws of this Territory to assess property therein for the purposes of taxation and to levy taxes therein, assessed and levied taxes upon said land for that year amounting in the aggregate to about the sum of $2000, all of which remain unpaid, and which the plaintiff refused, and still refuses, to pay; and the defendant, Iver L. Rockne, who is county treasurer of said county of Traill, did advertise and give public notice that on a certain day and place, to wit, on the first Monday in October, 1881, he would sell the said lands according to law, for the non-payment of the said taxes, and for the collection of the same.

Judgment for defendant, which was affirmed on appeal in the Supreme Court of the Territory. Plaintiff below appealed to this court.

*Mr. W. P. Clough* for appellant.

*Mr. M. S. Wilkenson, Mr. Miller* and *Mr. Greene* for appellee.

I. If the appellant owned the lands when the taxes were levied, they were taxable. It derives its interest in them solely through the act of July 2, 1864, entitled "An Act granting Lands to aid in the construction of a Railroad and Telegraph Line from Lake Superior to Puget's Sound, on the Pacific coast, by the Northern Route." 13 Stat. 365. The words, " and be it further enacted that there be and hereby is granted to the Northern Pacific Railroad Company," found in § 3, followed, as they are, by language defining the area of the lands granted, constitute the basis of all the wealth and power of this corporation. Without such words it would have had no property to protect, no rights to enforce; much less could this action have been maintained. No amendment to this original grant has added to their force, or impaired any rights vested by them. The words " that there be and hereby is granted " are words of absolute donation, and import a grant in præsenti. _Leavenworth &c. Railroad Co._ v. _United States_, 92 U. S. 733 ; _Railroad Co._ v. _Smith_, 9 Wall. 95 ; _Schulenberg_ v. _Harriman_, 21 Wall. 44. Such words vest a present title in the grantee, though a survey of the lands and a location of the road are necessary to give precision to it, and attach it to any particular tract. The grant, then, becomes certain, and by relation has the same effect upon the selected parcels as if it had specifically described them. In other words, the grant was afloat until the line of the road should be definitely fixed. _Leavenworth &c. Railroad Co._ v. _United States_, cited above ; _Lesseuir_ v. _Price_, 12 How. 59 ; _Blair Land Co._ v. _Kitteringham_, 43 Iowa, 462 ; _Lee_ v. _Summers_, 2 Oregon, 260. Again, the title of the United States may pass as well by an act of Congress in the words of a present grant, as by patent. _Wilcox_ v. _Jackson_, 13 Pet. 498 ; _Stoddard_ v. _Chambers_, 2 How. 284. And the position that the grant in question conveyed a present existing title to the Northern Pacific Railroad Co. of all the lands granted, is supported by the clear weight of authority. _Schulenberg_ v. _Harriman_, above cited ; _Central Pacific Railroad Co._ v. _Dyer_, 1 Sawyer, 641 ; _Ballance_ v. _Forsyth_, 13 How. 18 ; _Meegan_ v. _Boyle_, 19 How. 130, 132, 175 ; _Railroad Co._ v. _Smith_, cited above.

But even if the grant in question did not vest the appellant with the legal title to the lands, still such lands may be taxed before the government has parted with the legal title, when the right to the title is complete. *Carroll* v. *Safford*, 3 How. 441; *Railway Co.* v. *Prescott*, 16 Wall. 603; *Railway Co.* v. *McShane*, 22 Wall. 444. It is conceded that except compliance with the provisions of the act of 1870, the company had done everything to perfect its title. As to that act we say: (*a*) Is it not a fair and rational construction of it to say that the law-making power intended thereby, not to divest the company, or persons interested in these lands, of any title given by the original grant, but simply to declare that neither the company nor persons claiming under it should receive from the United States the evidences of their previously acquired title to particular tracts of land until the costs of survey should be paid? (*b*) If this construction be not correct, then the act of 1870 must be construed either as one by which the government sought to reinvest itself with the title to lands it had ceased to own—an act of forfeiture or confiscation, and therefore absolutely void—or (*c*) An act impairing the obligation of the original grant, and therefore void not only as to the corporation not assenting thereto, but as to all interested in asserting its invalidity.

II. The charter of the Northern Pacific Railroad Company, as to the matters here discussed, has been before but two courts for construction. The Supreme Courts of Minnesota and Dakota, the former court without a dissenting opinion, fully sustained the position here taken, that the grant operated to divest the government of ownership, and vested it in the company, and made the first judicial distinction between the charter of this company and that of the Union Pacific Railroad Company. The judges of the latter court were divided in their opinions in this case, hence no opinion was given; but in *Northern Pacific Railroad Co.* v. *Peranto*, the Supreme Court of Dakota fully sustained the position here taken as to the nature and effect of the grant. The appellant bases its right to relief mainly on the authority of *Railway Co.* v. *Prescott*, and *Railway Co.* v. *McShane*, both cited above.

As the latter case reverses the former, on a point not material here, and affirms it as to matters which the appellant insists are important in the case at bar, we shall consider only the case last cited. It has no application to this case. An examination of the charters shows that there is a difference between the grants to the Union Pacific and those to the Northern Pacific. (1) The grants to the former are by patent, those to the latter by statutory grant. (2) The former received additional grants by the act of 1864, and of course took subject to the conditions of the supplementary grant. The latter received no additional grants by the act imposing the conditions. These differences are sufficient to show the inapplicability of those cases to this one.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from a decree of the Supreme Court of the Territory of Dakota.

A suit was brought by the appellant, in the District Court of Traill County, for the purpose of enjoining the authorities of that county from enforcing the collection of taxes assessed on lands of the company, on the ground that, by law and the acts of Congress to be hereafter considered, they were not subject to taxation. The District Court made a finding of the facts in the case, on which it declared the law to be for the defendant, and dismissed the bill. On appeal to the Supreme Court of the Territory, the case was twice argued, and, though the membership of that court was changed by the substitution of two new judges for two retiring judges between the two hearings, the court was, in each instance, equally divided, and the judgment it rendered of affirmance had but the assent of two judges out of the six who had heard it argued.

The railroad company claims that the lands in question are not taxable under the decisions of this court in the cases of the *Railway Co.* v. *Prescott*, 16 Wall. 603, and *Railway Co.* v. *McShane*, 22 Wall. 444.

In those cases taxes levied on lands granted by Congress to aid in building the roads were held to be void by reason of the fact that neither the companies, nor any one for them, had paid

to the United States the costs of surveying those lands by the government. The taxes in the first case had been levied by authorities of the State, under the laws of Kansas, and in the second by like authorities of the State of Nebraska.

These lands had originally been granted to the Union Pacific Railroad Company and other companies, to aid in building a road from the Iowa State line to the Pacific Ocean, by an act of Congress approved July 1, 1862. The company to which the grant was made for the branch of the road in Kansas was already in existence, and the company which received the grant to build the main road, namely, the Union Pacific Railroad Company, was chartered by this act, and the corporators immediately organized under it. In the year 1864, July 2, Congress, by an amendatory act, made additional grants to the companies, and made several changes in the charter or original act, one of which, found in § 21, reads as follows :

" That before any land granted by this act shall be conveyed to any company or party entitled thereto, . . . there shall first be paid into the Treasury of the United States the cost of surveying, selecting, and conveying the same, by the said company or party in interest, as the titles shall be required by said company." 13 Stat. 365.

In the case of *Railway Co.* v. *Prescott*, which was a writ of error to the Supreme Court of Kansas, this court held these lands could not be assessed and sold for taxes under State laws until this cost of surveying them was paid to the United States, because the government retained the legal title to the same to compel this payment. The case was decided in 1872.

In 1874 the case of the *Railway Co.* v. *McShane* came before us, involving the same question, and because it also involved some other points decided in *Railway Co.* v. *Prescott*, which the court reconsidered and overruled, it necessarily received full consideration, the result of which was to reaffirm the proposition that, until the United States was reimbursed for the expenses of the survey of those lands, they were not subject to State taxation.

By an act approved also July 2, 1864, 13 Stat. 365, Congress passed a law chartering the Northern Pacific Railroad Com-

pany to construct a road from Lake Superior to Puget's Sound, on the Pacific coast, by the northern route, and made a munificent grant of the public lands to aid in this construction. The terms of the grant and its conditions were much the same as the original grant of 1862 to the Union Pacific Company and its branches. It contained the following provision:

" SEC. 20. *And be it further enacted*, That the better to accomplish the object of this act, namely, to promote the public interest and welfare by the construction of said railroad and telegraph line, and keeping the same in working order, and to secure to the government at all times (but particularly in time of war) the use and benefits of the same for postal, military, and other purposes, Congress may at any time, having due regard for the rights of said Northern Pacific Railroad Company, add to, alter, amend, or repeal this act." p. 372.

And in 1870, when making the appropriation for the survey of these lands within the limit of the grant to the Northern Pacific Railroad Company, Congress added this proviso: " That before any land granted to said company by the United States shall be conveyed to any party entitled thereto under any of the acts incorporating or relating to said company, there shall first be paid into the Treasury of the United States the cost of surveying, selecting, and conveying the same by the said company or party in interest." 16 Stat. 305. It will be seen that this language is almost identical with § 21 of the act of 1864 concerning the lands granted to the Union Pacific Company, which was construed in *Railway Co.* v. *Prescott* and in *Railway Co.* v. *McShane.* As the principle of the exemption of these lands from taxation until the costs of surveying them were paid received the full consideration of the court in two cases argued and decided two years apart, and as it received the unanimous approval of the court, it must govern the present case, unless a distinction can be shown.

Such distinction is relied on, and has received the support of a decision of the Supreme Court of Minnesota in the case of *Cass County* v. *Morrison*, 28 Minn. 257. It is there held that the company, having built its road and earned the lands, had thereby acquired a complete equitable title, with right to de-

mand a patent, though the costs of survey had not been paid, and this equitable title was subject to taxation. It was also held that, because the requirement to pay these costs was made in 1870, six years after the original grant, it was void as an unconstitutional exercise of power by Congress.

But we think that the clause authorizing Congress " to add to, alter, amend, or repeal the act of 1864," clearly conferred this power on Congress, especially when exercised, as in this instance, before the company had built a mile of road, or earned an acre of land, or in any other manner secured an equitable right to the lands. *Sinking-Fund Cases,* 99 U. S. 700, 719.

But this very question, in a little different form, was raised and decided in *Railway Co.* v. *Prescott,* 16 Wall. 603. In that case the original grant, made in 1862, contained no provision about the payment of the costs of survey. The act of 1864, which did contain this provision, added very largely to the area of the land granted by the act of 1862, and the opening sentences of the opinion state the proposition whether the requirement that the costs of surveying must be paid before the patent shall issue, covers all of both grants or only that of 1864, and it is held that it covers both. We think this governs the present case. Independently of the clause of the act of 1864 authorizing amendments, additions, and repeals, we think that, until the lands were earned, and other acts that the law demanded that the company should do had been done, it had no such right in the lands as would prevent Congress from passing a remedial provision so eminently just as the one under consideration.

Again, it is said that, since the road was built before this tax was levied and the company had earned the land, its equitable title was complete, and, according to the decisions of this court, it was subject to taxation.

The same point was urged in *Railway Co.* v. *Prescott.* But the court said that " this doctrine was only applicable to cases where the right to the patent is complete, the equitable title fully vested, without anything more to be paid or any act to be done going to the foundation of the right." But it added, in that case, that two important acts remained to be done, the

failure to do which might wholly defeat the company's title. One of these was payment of the costs of surveying.

It may be well to restate the grounds on which this decision rests.

The United States made a magnificent grant to this company of lands equal in quantity to forty or fifty thousand square miles, an area as large as an average State of the Union. It thought proper to require of the grantee the payment of the costs of making the surveys necessary to the location and ascertainment of these lands. To secure the payment of those expenses, it decided to retain the legal title in its own hands until they were paid. The government was, as to these costs, in the condition of a trustee in a conveyance to secure payment of money. But, if the land was liable to be sold for taxes due to State, Territorial, or county organizations, this security would be easily lost.

No sale of land for taxes, no taxes can be assessed on any property, but by virtue of the sovereign authority in whose jurisdiction it is done. If not assessed by direct act of the legislature itself, it must, to be valid, be done under authority of a law enacted by such legislature. A valid sale, therefore, for taxes, being the highest exercise of sovereign power of the State, must carry the title to the property sold, and if it does not do this, it is because the assessment is void.

It follows that, if the assessment of these taxes is valid and the proceedings well conducted, the sale confers a title paramount to all others, and thereby destroys the lien of the United States for the costs of surveying these lands. If, on the other hand, the sale would not confer such a title, it is because there exists no authority to make it.

At all events, the holder of the equitable title to these lands has a right to prevent a sale which would have the effect of impeding the United States in the assertion of the right to them until these costs are paid.

We are aware of the use being made of this principle by the companies, who, having earned the lands, neglect to pay these costs in order to prevent taxation. The remedy lies with Congress and is of easy application. If that body will take steps

to enforce its lien for these costs of survey, by sale of the lands or by forfeiture of title, the Treasury of the United States would soon be reimbursed for its expenses in making the surveys, and the States and Territories, in which the lands lay, be remitted to their appropriate rights of taxation. The courts can do no more than declare the law as it exists.

> *The decree of the Supreme Court of the Territory of Dakota is reversed, and the cause remanded, with directions to cause a decree to be entered perpetually enjoining the Treasurer of Traill County from any further proceeding to collect the taxes in the bill mentioned.*