ROBERTSON v. SEWELL.

SEWELL v. ROBERTSON et al.

(Circuit Court of Appeals, Fifth Circuit. March 15, 1898.)

No. 626.

1. TAXATION—SPANISH GRANTS.
　　Until a Spanish grant has been segregated from the public domain by survey properly approved, it is not subject to taxation by state authority, and a sale thereof for such taxes is void.

2. PUBLIC LANDS—SPANISH GRANTS.
　　The survey of a Spanish grant, as recorded in 1851, contained 18,121.22 acres, and was approved by the surveyor general in 1871. In the chancery book was found what purported to be a decree entered in 1851, confirming the surveyor's report to the extent of 16,000 acres. The decree was not signed by the judge, nor was it his practice to sign decrees, but the decree purported to be entered three days before the answer praying it was filed. *Held*, that the decree was not final so as to bar a further survey and confirmation.

In Error to the Circuit Court of the United States for the Southern District of Florida.

This is an action of ejectment brought by Anna Bell Robertson and others, in the United States circuit court for the Southern district of Florida, involving the title to a tract of land described in the declaration. The court below filed the following findings and opinion:

"This cause coming on for a trial before the court, the parties having waived a jury by stipulation duly filed herein, and the same having been fully heard by documentary and written evidence and the oral testimony of witnesses and by argument, and having been fully considered, the court finds as matters of fact:

"First. That a grant of land five miles square on Indian river, at the mouth of San Lucie river, was made by the representatives of the Spanish government to one Samuel Miles, July 19, 1813; that May 17, 1815, said grant was surveyed in a square form by one McHardy; that said grant and survey were confirmed in 1840 by the superior court of the United States for the district of East Florida to certain grantees of said Miles; that upon appeal

to the supreme court of the United States said confirmation was set aside as to the survey, but confirmed as to the validity of the grant, and a mandate issued directing that a new survey be made of the places and for a number of acres designated by said grant, of a form in accordance with the views expressed in the opinion in said case, namely, that the width on the river was not to exceed one-third of the length of the said survey back from said river [U. S. v. Hanson, 16 Pet. 196]; that in November, 1844, a new survey was ordered, which was made by the surveyor general through his deputy, Houston, and returned June 14, 1845; that such survey was also in a square form, and not in accordance with the mandate of the supreme court, and was rejected by the presiding judge of said superior court; that another survey was ordered to be made in accordance with the principles stated by the supreme court and its mandate; that on the 26th day of April, 1850, John M. Hanson et al. filed in said superior court a petition praying that said petitioners might be permitted to locate the number of acres contained in said grant in parcels in any land office in the state of Florida; that on the 18th day of April, 1851, the United States attorney for said district filed his answer to such petition, representing that a new survey had been made, and that petitioners should be limited to such location; that there was filed by A. M. Randolph, a deputy surveyor, in 1851, a plat and description of the claim of John M. Hanson and others as the claim designated in the 'register of mill grants in the name of Samuel Miles'; that such survey contained 18,121.22 acres, and was not approved by the surveyor general until November 25, 1871; that there was found recorded in the chancery book of the United States district court for the Northern district of Florida, under date of April 15, 1851, what purports to be a decree of confirmation of the said survey made by A. M. Randolph to the extent of sixteen thousand acres, and orders that the said lands thus located, surveyed, and described be decreed to be fully and finally confirmed to said claimants; that such decree was not signed by the presiding judge, and purported to be entered three days before the answer of the United States attorney praying the decree was filed; that it was not the practice at that time for the judge to sign decrees; that subsequently, April 14, 1880, upon the petition of one Jonathan C. Greely, assignee in bankruptcy of said John M. Hanson, alleging that no survey had ever been made as required and directed by the supreme court of said grant, an order was made that the surveyor general of the state of Florida do survey said Spanish grant to Samuel Miles in accordance with the mandate and opinion of the supreme court, and file a plat and map of said survey in said cause; that such survey was made in accordance with such order, and a survey and plat was filed in this court in this cause containing 16,006.38 acres, and that said survey and plat was in all respects approved and confirmed upon the application of Rufus K. Sewell et al.; that application was duly made to the general land office of the United States, and a patent issued from said office giving and granting unto John M. Hanson, John J. Hedrick, Bernardo Segui, and Dionisia Segui, and their heirs and assigns, the land described in said foregoing survey, provided that such patent should not interfere with any valid adverse right to the same, or be construed to preclude a legal investigation by a proper judicial tribunal; that said John M. Hanson, John J. Hedrick, Bernardo Segui, and Dionisia Segui were the original grantees of said Samuel Miles; that said patent was issued the 4th day of September, 1889; that December 1, 1890, Sarah Van Wagenon and others, among whom were all of the plaintiffs in the present suit, filed their petition alleging the previous survey by A. M. Randolph, and the alleged decree confirming said plat and survey, and praying that all subsequent action by Jonathan C. Greely, as assignee in bankruptcy of John M. Hanson, and others, and the survey and plat made under the order of April 14, 1885, and the decree of confirmation thereof, be vacated and set aside as null and void on account of the court's having no jurisdiction, it having exhausted its jurisdiction by its said previous action, and for other relief, to which a demurrer was filed, which, upon being fully heard, was sustained, and, no application to amend being made, said petition was dismissed.

"And the court further finds, as a matter of fact, that subsequent to the survey of said grant of 1851, certain lands calimed [claimed] to have been surveyed as such grant in the survey of Randolph, to the extent of 17,970.97

acres, were entered upon the tax books of the state of Florida for the county of Dade, and assessed as of unknown ownership, for the years 1877, 1878, and 1879, and were put at auction for sale for such taxes on the 6th day of September, 1880, and, there being no bidder, were reported as sold to the state of Florida for the sum of $292.65; and on the 1st day of May, 1882, W. D. Barnes, comptroller of said state, did transfer and assign such certificate to Sarah A. Falligant, Sarah A. Van Wagenen, Mary R. Gilbert, Fannie E. Lanier, Anna Bell S. Robertson, and Electra C. Falligant, plaintiffs herein, and upon the presentation of said certificate to the clerk of the said county of Dade he made a deed of said 17,970.97 acres to said Sarah A. Falligant and others as aforesaid.

"And the court further finds, as a matter of law, that the action of the court in ordering and approving the survey of Hopkins, as is shown in evidence, and in the matter of the petition of the plaintiff herein in the case of Van Wagenen et al. against Sewell, is binding upon this court, and that all such rights of the plaintiffs herein as against the defendant, as relates to and depends upon the said survey of Randolph in 1851, and the confirmation thereof, and the said survey of Hopkins, and approval and confirmation thereof, of 1889, have been heretofore determined and settled, and such questions are res judicata by the action of the court in the said case of Van Wagenen against Sewell.

"And the court further finds, as a matter of fact, that the defendants, claiming for Rufus K. Sewell, went onto and took possession of the eastern one-third part of said grant in November, 1889, and has held possession of the same as his one-third interest in said grant ever since, and paid taxes on the same, and has ousted plaintiffs from any interest in said one-third of said grant.

"And the court further finds, as a matter of law and fact, that the grant to Samuel Miles was never legally segregated from the public domain at the time when the taxes were assessed on the grant, and prior to the time it was sold, as cited in the tax deed put in evidence by the plaintiffs, and said alleged sale and said tax deed were null and void.

"And the court further finds that the plaintiffs herein are by proper and legal conveyance jointly entitled to a fee-simple title in and to the possession of one undivided third part and interest in the entire tract, lot, or parcel of land situated in the county of Dade, state of Florida, and known and described as follows, to wit: [Then follow same description of land as described in the declaration]; and that for this one-third undivided part of such lot or parcel of land, together with their costs herein, they are entitled to judgment."

Opinion.

"The plaintiffs in this case claim title and possession of the property in dispute from two sources: First, the plaintiffs claim to be the heirs of the grantee of one-third of the entire grant; second, they claim under a tax deed from the state of Florida for the nonpayment of unpaid taxes.

"The case was tried by the court upon stipulation of parties, in one of which was stipulated that Miles, the original grantee, conveyed one undivided third interest through John J. Hedrick; in another it is stipulated that Hedrick's interest purports to have been conveyed to John G. Falligant, and the plaintiffs are his heirs and devisees. It was further stipulated that, in 1890, Rufus K. Sewell claims to have gone upon the east one-third of the land, and claimed it as his third, and has claimed to pay taxes on that portion since 1891 or 1892. The title of Rufus K. Sewell is shown by a regular deed of conveyance from John M. Hanson, and a deed of conveyance from said Rufus K. Sewell to the defendant Henry E. Sewell.

"First the defendant pleaded the general issue of not guilty, but on the 27th day of January, after the case was called for trial, the defendant filed an additional plea, viz. that the defendant had never denied the right of the plaintiffs to the undivided one-third interest of the grant.

"The court has found that the tax title under which the plaintiffs claim is void, but that they are entitled jointly to an undivided one-third interest in fee simple of the entire grant, and that they had been so ousted from the possession of the eastern one-third of the grant as to entitle them to judgment upon this suit. Exceptions to such findings have been taken.

"It is contended by the defendant that the plaintiffs, having claimed the whole of the premises, are not entitled to judgment unless found to be entitled to the whole. The court does not consider the law to be so determined in this state. The common-law action of ejectment has been done away with, and the statute which has taken its place plainly provides that, in any suit for ejectment, the judgment shall determine and declare the interest that the plaintiff may have in the premises claimed. The court considers that wherever any interest is found in the plaintiff, not more than that claimed by him he is entitled to judgment for that amount, although it may be of less quantity than that sued for. This view is sustained by the text and a large number of authorities cited in Waite's Action and Defenses (volume 3, p. 123).

"It is also claimed by the defendant that there is no evidence which would justify the findings of fact that the plaintiffs were entitled to an undivided one-third interest in the land. The language of the stipulation that Hedrick's interest purports to have been conveyed to John G. Falligant can only be considered as equivalent to a declaration and stipulation that there is evidence which tends to show that Hedrick's interest has been conveyed to John G. Falligant, and this, taken in connection with the plea of the defendant that he had never denied that the complainants were entitled to a one undivided one-third interest in the property, the court considers may be deemed as an allegation and an admission of the title in the plaintiffs to that amount. Any other construction would appear to be simply holding out an inducement to plaintiffs to waive introducing testimony upon that point, and then taking advantage of such omission.

"The only other ground of exception is to the finding of fact that the defendant did oust plaintiffs from any possession which would justify this suit.

"The sixteenth stipulation is that Rufus K. Sewell claims to have gone upon the eastern one-third of the land and claimed it as his one-third. The defendant, Henry E. Sewell, testifies that he, in 1889, went onto this, and claimed for his father a part of this land, and his improvements were upon the northeastern portion. There can be but one conclusion drawn from this stipulation and testimony, taken together, and that is that the defendant herein claimed that which is stipulated his father claimed, and since that time been holding the land with the same understanding that it is stipulated that Rufus K. Sewell claimed; that is, he claimed the eastern one-third of the land as his third. This is considered a reasonable and necessary conclusion that the land was held, claimed, and possessed as an entire interest of that eastern one-third instead of the one undivided third of the entire lot which it is admitted he was entitled to: and such possession of the one-third it is considered fully justifies the finding that the plaintiffs had ousted the defendant from any interest in that eastern one-third.

"It is also contended by the defendant that he having admitted by his plea that the plaintiffs were entitled to one undivided third interest, and the court not having found them entitled to any greater interest than it is so admitted, the costs should not have been adjudged against him herein. Had such plea of admission of the right of the plaintiffs been filed at an earlier stage of the case, it might have been considered more favorably; but until the case was called for trial the defendant had stood upon his plea of not guilty, which, under the statute, is held to admit both his possession and adverse claim. It is true that a party can, by admission of the rights of the plaintiff at any time in the suit, prevent a judgment for subsequent costs, but at no time will such action be held to affect the costs which had already been incurred up to that time. In this case the late filing of such plea cannot be considered as depriving the plaintiffs of their right of costs up to that time, as certainly no opportunity was given for them to dismiss their suit or obtain their rights in any other manner previous to that time.

"It is ordered, therefore, that the judgment be so far amended as to make the defendant liable to the cost of suit up to the time of the filing of that plea; and the motion for arrest of judgment and a new trial is denied."

H. H. Buckman, for Anna Bell Robertson and others.

H. Bisbee and C. D. Rinehart, for Henry E. Sewell.

Before PARDEE and McCORMICK, Circuit Judges.

PER CURIAM. As the parties waived trial by jury in the circuit court and submitted the case to the judge, we are concluded by the findings of fact. The vital question in the case is whether the lands in controversy had been so segregated from the public domain by the alleged decree in 1851 as to permit of their assessment and taxation by the state of Florida in the years 1877, 1878, and 1879. From the findings of fact relating to the decree of 1851, we are of opinion that the said decree did not become final and executory. This we understand to be the ruling of the circuit court, and we affirm the same. Affirmed.