### UNITED STATES v. LOSEKAMP.

#### (Circuit Court of Appeals, Ninth Circuit. February 1, 1904.)

#### No. 967.

1. PUBLIC LAND—RAILROAD GRANTS—TITLE—SURVEY—DEPOSIT OF COST.

Since, under Act Cong. July 2, 1864, c. 217, 13 Stat. 365, granting lands to the Northern Pacific Railroad Company, such company acquired title to the odd-numbered sections within the place limits of its grant on the filing of its map showing the definite location of its road, without payment or deposit of the cost of survey under Act Cong. July 15, 1870, c. 292, § 1, 16 Stat. 291, 305, declaring that, before any land shall be conveyed to the company, it shall deposit the cost of surveying, selecting, and conveying the same in the United States Treasury, the United States could not recover for timber cut from the public domain, which, when surveyed, would consist of odd-numbered sections within the railroad grant, and would then be conveyed to the railroad company.

In Error to the Circuit Court of the United States for the Eastern Division of the District of Washington.

This action was brought by the United States against the defendant to recover the value of timber cut from unsurveyed land claimed to be public land. The bill alleged that certain unsurveyed public lands situated at Nason Station, Chelan county, Wash., and near Chiwaukum, Wash., would be, if surveyed, certain described sections; that during the years 1893 to 1901, inclusive, there was growing upon said lands a large amount of valuable timber, the property

of the plaintiff; that during those years one W. H. Middleton unlawfully, and without any authority whatever, entered upon said land and upon the lands of plaintiff immediately contiguous thereto, and cut down a large quantity of timber, and manufactured the same into saw logs; that he afterwards removed the said saw logs, and manufactured the same into lumber, and sold and delivered the same to various persons—among others, 144,000 feet of the said lumber so unlawfully taken to the defendant herein, which was at the time of the value of $1,440; that defendant converted the lumber to his own use, and refused to pay the plaintiff therefor. Judgment was asked for the sum of $1,440. The defendant denied generally the allegations of the complaint, and, as matter of defense, alleged that, if any of the lumber or saw logs or timber described in the complaint was cut from the lands described by the said Middleton, it was so cut, manufactured, and disposed of in the innocent belief that the said lands belonged to the Northern Pacific Railway Company, and with the understanding and belief that he had a right to cut and remove the timber and manufacture the same into lumber. Defendant alleged that he himself had no knowledge that any of the lumber purchased by him from said Middleton was taken from the lands of the plaintiff, and, further, that the defendant acted merely as a middleman, and distributed the said lumber to customers of the said Middleton, receiving a small commission therefor.

It was shown upon the trial that Middleton ran a sawmill for several years with timber cut from the lands described in the complaint, which were unsurveyed lands within the primary limits of the grant to the Northern Pacific Railroad by the act of July 2, 1864, c. 217, 13 Stat. 365; that, if surveyed, these lands would be the odd and even numbered sections mentioned in the complaint; that the defendant was a general merchant, with whom Middleton had a running account, and to whom he shipped lumber at various times for distribution by him to various customers, and at times for his own purposes; that the timber was worth, in the standing tree, 50 cents per thousand feet; that the reasonable value of the lumber, when shipped, was $7 and $8 per thousand feet, and, from the books of account of the defendant, lumber had been received from Middleton, for himself and others, and credited to his account, during the years 1896, 1897, 1898, and 1899, in the sum of about $2,200. Middleton himself testified that when cutting the timber he thought he was cutting, and intended to cut, from the odd-numbered sections within the railroad limits, and that he had settled with the railroad company for the cutting done by him.

A verdict was rendered in favor of the plaintiff, in the sum of $105.60, and judgment entered accordingly. The action is now before this court upon writ of error sued out by the plaintiff.

Jesse A. Frye, U. S. Atty., and Edward E. Cushman, Asst. U. S. Atty.

Robertson, Miller & Rosenhaupt and Frank Reeves, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The error assigned is the refusal of the court below to allow the plaintiff to show that the Northern Pacific Railway Company had failed to deposit in the Treasury of the United States the money necessary to pay for the survey, selection, and transfer of the lands involved herein, under the requirements of the act of July 15, 1870, c. 292, § 1, 16 Stat. 291, 305.

The court instructed the jury that it was to consider whether the timber in question was cut, without license or permission, from land to which the government had full title; that it was admitted that the lumber received by the defendant was cut from timber on an unsurveyed area, which, when surveyed, would be divided into legal subdivisions, some of which would be even-numbered sections, and some odd-num-

bered sections; that this unsurveyed area was within the limits of the land grant of the Northern Pacific Railway Company, and within these limits the government had parted with its title to the odd-numbered sections, and had retained its title to the even-numbered sections. The court thereupon limited the inquiry of the jury to the question as to the amount of lumber cut and removed from the even-numbered sections. To these instructions of the court, no exceptions were taken by the plaintiff. The instructions presented the direct and only question involved in this writ of error, namely, was the United States entitled to recover for the value of the timber cut and removed from the odd-numbered sections within the grant to the Northern Pacific Railway Company, as well as from the even-numbered sections within that grant?

The ruling of the court excluding testimony tending to show that the land had remained unsurveyed because the Northern Pacific Railway Company had failed to deposit in the Treasury of the United States the money necessary to defray the expenses of making the survey did not necessarily involve the whole question in controversy, and the judgment of the court below might be affirmed for that reason. But, passing over this objection to the assigned error, we will consider whether the evidence offered was material and relevant to the question before the court.

The act of July 2, 1864, granting lands to the Northern Pacific Railroad Company to aid in the construction of a railroad, has been considered many times by the Supreme Court of the United States. In Buttz v. Northern Pacific Railroad, 119 U. S. 55, 7 Sup. Ct. 100, 30 L. Ed. 330, the court seems to have favored a construction of the act that would withdraw all odd-numbered sections of public land from sale, entry, or pre-emption within the limits of 40 miles, upon the filing of a map showing the general route of the proposed railroad, thus making the grant operative before the filing of a map of definite location of the road. In St. Paul, etc., Ry. v. Northern Pacific Ry., 139 U. S. 18, 11 Sup. Ct. 389, 35 L. Ed. 77, this decision was approved, upon the point that, after withdrawal of land upon the designation of the general route, no adverse interest could be acquired therein against the railroad company. In the recent case of Nelson v. Northern Pacific Railway, 188 U. S. 108, 23 Sup. Ct. 302, 47 L. Ed. 406, it is definitely stated that under the grant in question the railroad company acquired no vested interest in the granted lands prior to definite location of the road, citing many previous decisions of the Supreme Court in support of this holding; and, commenting upon the fact that the decision in Buttz v. Northern Pacific Railroad, supra, seemed to support the proposition that some interest was acquired upon the designation of the general route, the court disclaims the idea that the eminent jurist who delivered the opinion of the court in that case meant to announce any new doctrine, or make statements inconsistent with other of his expressions which plainly showed his opinion to be that the grant did not become thoroughly operative until the map of definite location was filed.

There is no contention that the map of definite location was not filed in the present case before the trespass complained of, but it is contend-

ed by the plaintiff in error that, even under the construction of the act above stated, the legal title to the odd-numbered sections did not pass to the railroad company until the payment of the cost of the survey into the Treasury of the United States; that, until it is shown that such payment was made, the title to the lands must be considered to have remained in the United States. This contention is based upon a clause in the act of July 15, 1870, making appropriations for sundry civil expenses, which provides for the expenditure of a certain sum of money for the survey of the public lands within the limits of the land grant to the Northern Pacific Railroad Company, provided "that before any land granted to said company by the United States shall be conveyed to any party entitled thereto under any of the acts incorporating or relating to said company, there shall first be paid into the Treasury of the United States the cost of surveying, selecting, and conveying the same, by the said company or party in interest." 16 Stat. 305. There is no provision in this act that a forfeiture of the lands shall result in the case of failure to pay the cost of survey. It merely directs that the muniment of title shall be withheld until such payment is made. A lien is created in favor of the United States for the cost of the survey, which takes priority over all other claims, even the state taxes (Northern Pacific Railway v. Traill County, 115 U. S. 600, 6 Sup. Ct. 201, 29 L. Ed. 755), but does not affect the right and title of the railroad company to the lands, or impair the force of the operative words of transfer in the grant (Deseret Salt Co. v. Tarpey, 142 U. S. 241, 12 Sup. Ct. 158, 35 L. Ed. 999).

The title to the odd-numbered sections having passed to the defendant in error, and this suit not depending upon the payment of the cost of survey, the testimony offered by the plaintiff in error was irrelevant and immaterial.

The judgment of the court below is affirmed.