[No. 11549. Department Two. September 12, 1914.]

BIRD TIMBER COMPANY, *Respondent*, v. SNOHOMISH COUNTY
*et al.*, *Appellants*.[1]

[Syllabus by the Reporter.]

PUBLIC LANDS — GRANTS — LIEU LAND SELECTIONS — UNSURVEYED
LANDS—DESCRIPTIONS—SUFFICIENCY. Under 30 U. S. Stat. at Large,
36, authorizing lieu land selections in place of *bona fide* claims or
patented lands included within the limits of a public forest reserva-
tion and relinquished to the government, the lands selected, if within
the unsurveyed portion of the public domain, must be described by
metes and bounds with reference to natural monuments so that they
can be identified, and it is not sufficient to describe them by the
government subdivisions which it is expected will apply when the
government survey is extended.

SAME—GRANTS—UNSURVEYED LANDS—RIGHTS OF SETTLERS—PRIOR-
ITY OVER LIEU LAND SELECTIONS. Under 21 U. S. Stat. at Large, 140
making vacant unsurveyed public lands subject to settlement by
qualified homesteaders, with preferential rights to file a homestead
application upon lands settled upon and to perfect entry thereof
when the surveys are extended, a settler's rights are superior to a
prior lieu land selection, where the lieu land applicant failed to de-
scribe the lands by metes and bounds, with reference to natural
monuments, so that the land could be identified.

SAME—LIEU LAND SELECTIONS—APPROVAL—CONFIRMATION—NECES-
SITY. The approval of the commissioner of the general land office
of lieu land selections does not confer any vested rights in the land,
where the approval was not confirmed by the Secretary of the In-
terior, but the executive department had decided that the approval
was without authority or jurisdiction, and included the lands within
a forest reserve.

TAXATION — PUBLIC LANDS — DEFECTIVE LIEU LAND SELECTIONS—
VESTED RIGHTS. Where lieu land selections of unsurveyed lands
were defective because of an insufficient description and the ap-
proval of the selection was without authority or jurisdiction and
conferred no vested rights in the lands, the same are not subject to
taxation as the property of the applicants, and a tax lien thereon
will be cancelled as a cloud upon the applicants' right to make lieu
land selections under the forest reserve act, the lands having mean-
while been included in a public forest reserve.

[1]Reported in 143 Pac. 433.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered March 5, 1913, in favor of the plaintiff, upon overruling a demurrer to the complaint, in an action to cancel a tax levy.   Affirmed.

*R. J. Faussett* and *Joseph H. Smith,* for appellants.

*J. A. Coleman,* for respondent.

FULLERTON, J.—This action was brought by the Bird Timber Company, a corporation, against Snohomish county, to cancel taxes levied by that county for the year 1912, and prior years, upon certain described lands which the county contends are subject to assessment and taxation as property of the Bird Timber Company.  To the complaint of the company, the county interposed a general demurrer, which the trial court overruled.  The county elected to stand on its demurrer and refused to plead further, whereupon judgment was entered against it for the relief demanded.  The county appeals.

In the complaint it is alleged, in substance, that, prior to the year 1909, one Jacob Goldberg applied at the United States land office for the selection of unsurveyed public lands of the United States, situated in Snohomish county, describing the land desired to be selected as the north half of section five, in township twenty-eight, north, of range ten, east of the Willamette Meridian; and that, prior to the year 1909, one Jennie V. Hayes applied at the United States land office for the selection of certain other public lands of the United States situated in the same county, describing it as parts of sections fourteen, twenty-three, and twenty-four, in township twenty-eight, north, of range ten, east of the Willamette Meridian; "that such applications to select were made under the act of Congress of June 4, 1897, being an act for the selection of lands in lieu of other lands which have been included in the forest reserves created by an order of the executive department of the United States under and by vir-

14—81 WASH.

tue of authority granted by acts of Congress; that said selections were sought to be in lieu of the whole of certain lands not in Snohomish county." It is further alleged, that, on August 19, 1902, Goldberg conveyed, by deed, all the right, title, and interest acquired by him in virtue of his application, and all title and interest which he might thereafter acquire, in and to such land, to the Everett Timber and Investment Company; and that, on September 25, 1900, Hayes conveyed, by deed, all the right, title, and interest acquired by her in virtue of her application in and to the lands therein described, and all the title and interests which she might thereafter acquire in and to such lands, to the same company, and that that company had, by mesne conveyances, subsequently conveyed such title and interest to the Bird Timber Company; "but that none of said parties ever had any title to said lands, or any part thereof, or any interest therein, except such interests as they may acquire pursuant to said Goldberg and Hayes applications, and that the title to such lands is in the United States."

It is then alleged that the selections were approved on their presentation to the commissioner of the general land office of the United States, but that the Secretary of the Interior decided, with reference to an application similar to the applications in question, that such approval was without jurisdiction or effect, and that, thereupon, the commissioner suspended the applications and withheld the same from patent, and that subsequently the lands embraced within the township and ranges described were, by order of the executive department of the United States, included in the Snoqualmie national forest reserve, and are now a part of such forest reserve; "that, notwithstanding the facts aforesaid, the defendant Snohomish county, by its assessors and taxing officers, caused said land to be assessed and taxes levied thereon for several years last past," and that such taxes constitute a cloud upon the timber company's lieu land rights.

The act of Congress of June 4, 1897, under which the se-

lections in question were attempted to be made, provided that, in cases in which a tract of land, covered by an unperfected *bona fide* claim or by patent, is included within the limits of a public forest reservation, the settler or owner thereof may, if he desires to do so, relinquish the tract to the government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent. 30 U. S. Stat. at Large, 36. By the acts of June 6, 1900, and March 3, 1901, the right of selection was "confined to vacant surveyed nonmineral public lands which are subject to homestead entry." 31 U. S. Stat. at Large, 614, 1037. The statutes were all repealed, save as to the right to perfect selections theretofore made, by the act of March 3, 1905. 33 U. S. Stat. at Large, 1264.

It is the contention of the appellant that the selection of the lands in question by the predecessors in interest of the present claimant, the acceptance of the lands by the government given in exchange for them, and the attempted approval of the selection and exchange by the commissioner of the general land office, vested in the persons making the selection the equitable title to the lands selected, and that the United States now holds the property in trust for such persons, or their successors in interest, and can be compelled to convey such property to the person entitled thereto, when the same is surveyed and becomes subject to patent; and that they are, for that reason, taxable under the laws of the state.

But in our opinion the facts shown by the complaint do not justify this conclusion. In the first place, we think the description of the property contained in the selections is insufficient to designate any specific tract of property. At the time the selections were made, there was not, nor is there now, any specific tract of land marked on the ground which can be located by the descriptions contained in the selections. It may be that, in the course of time, the government will survey certain lands, and denote them in the surveys in ac-

cordance with the descriptions in the selections contained in
the Hayes selection, but it is reasonably certain it will not
designate any tract in accordance with the description con-
tained in the Goldberg selection. This tract, if the present
system of surveys is pursued, will border on a township line
and will, in all probability, be fractional in quantity, in which
case it will be described in part by lot numbers, instead of
the general description contained in the selection. But, be
this as it may, there is no means of ascertaining prior to the
actual government surveys what specific tracts of land will
be included in the descriptions. It is true that the act first
cited allowed lieu selections to be made on unsurveyed pub-
lic lands. But to be effective as to particular tracts, they
must have been made by metes and bounds, with a descrip-
tion having a beginning point at some natural or artificial
monument which could be readily and definitely located on
the ground. *F. A. Hyde*, 40 Land Dec. 284.

In the second place, if it be conceded that the descriptions
are sufficient to vest some right in the selectors, and it be
conceded that the government will, at some future time, mark
and designate certain tracts of land with the descriptions
contained in the selections, there is no certainty that the
selectors or their successors in interest will be allowed to pat-
ent the specific tracts claimed. By the act of May 14, 1880
(21 U. S. Stat. at Large, 140) the vacant unsurveyed public
land of the United States is made subject to settlement by
any person qualified to claim land under the homestead laws,
and such person is given by the act a preferential right to
file a homestead application on the lands so settled upon, and
to perfect an entry thereof as soon as the surveys are ex-
tended over them. As the description in the applications in
question is indefinite as to the land selected and were marked
in no other way, the applications can and may be defeated
by actual settlements on the land by *bona fide* homestead
claimants made subsequent to the dates of the selections and

prior to the extension of the public surveys over them.   As was said by acting secretary Adams in *F. A. Hyde, supra,*

"A person owning land within the limits of a public forest reservation was not bound to relinquish it to the Government.   He might still own, hold, and enjoy it.   He was not bound to accept the invitation extended by that act to make such relinquishment, but when he did so he was bound, not only by the terms of the act but by the limitations upon its benefits imposed by other laws.   He might have selected surveyed public lands of the United States, vacant and open to settlement, and upon proof of their nonmineral character and nonoccupancy concurrent in time with the selection, he might have completed title thereto without delay; but if he selects unsurveyed lands it is a matter of his own choice and made at his own risk.   It may be that the risk might have been reduced to the minimum by such description in making the selections as would have identified the lands as a then present fact, but where such identification was not made the selector necessarily takes the risk of their being or becoming occupied adverse to his selection before the approval of the township plat of survey, which, no matter what may be the application of the doctrine of relation in such cases, is the first identification of such land.   Such identification previous to that time was not possible, either by the unofficial protraction of the lines of subsisting public surveys, or by a private survey of any character.   The United States are sovereign and the sovereign makes his own surveys. . . .

"The mere fact that the act provides for the selection of vacant land open to settlement is conclusive upon this proposition.   If it were not open to settlement, it was not subject to selection; but being subject to selection it was still, unless identified in fact, open to settlement under the act of May 14, 1880, *supra*, and might be under the provisions of that act appropriated adversely to the selector at any time before the approval of the township plat of survey.   Such approval was an identification of the land as of that date, and by relation as against the Government as of the date of the proffers of exchange, but it did not and could not so attach as to cut out intervening adverse settlement claims.   This thought receives additional support in the proviso of the act relating to cases of unperfected claims upon the lands relinquished and requiring the laws respecting settlement, resi-

dence and improvement, etc., to be complied with on the new claims, credit being allowed for the time spent on the relinquished ones.   In cases of this sort the selector could without fear of jeopardizing his selection make it of unsurveyed land, because he would be required to settle, reside upon and improve such unsurveyed land and this residence, settlement and improvement would be notice to the world of his claim which would fully protect him until the filing of the township plat of survey, when he would be permitted to make entry thereof and complete title under the further terms of said act."

See, also, *DeLong v. Clarke*, 41 Land Dec. 278.

The appellants argue, however, that the right of the selectors to the lands became vested by reason of the approval of the selections by the commissioner of the general land office.   But it also appears that the approval was made without authority or jurisdiction, and that the lands were subsequently, by order of the executive department, included in a national forest reserve.   Whatever effect the approval might have had, had it been subsequently confirmed by the secretary of the interior, it cannot now have the effect of vesting in the selectors any vested interest in the lands selected.

We are clear, therefore, that neither the selectors nor their successors in interest have any taxable interest in the property in question, and that there is no error in the judgment of the court in so far as it so decides.

The judgment will stand affirmed.

CROW, C. J., PARKER, MOUNT, and MORRIS, JJ., concur.