NORTHERN PAC. RY. CO. v. THOMPSON, County Treasurer.

THOMPSON, County Treasurer, v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. May 20, 1918.)

No. 3085.

1. TAXATION ⬤⇒179—PUBLIC LANDS—RAILROAD GRANT.
    Until approval by the Commissioner of the General Land Office, etc., of plats for the survey of lands granted to a railroad company, such lands are not subject to taxation under Act July 10, 1886; so, where the approval was not had until after March, 1915, Montana lands so granted were not subject to taxation for that year or the year previous, the Montana statutes allowing taxation only of property having a taxable status on the first Monday in March.

2. TAXATION ⬤⇒179—PUBLIC LANDS—RAILROAD GRANT.
    Where plats showing the survey of lands granted a railroad company were approved in 1915, and in March, 1916, filed in the local land office for Montana, the lands were subject to state taxes for 1916, for the land must have been identified prior to the first Monday in March, so as to have a taxable status under the Montana statutes, as the plats were required to be in the possession of the land office 30 days before filing.

    Ross, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action by the Northern Pacific Railway Company against J. R. Thompson, as County Treasurer of Flathead County, Mont. There was judgment for plaintiff on two of the three counts, and for defendant on the other, and both parties bring error. Affirmed.

Gunn & Rasch, of Helena, Mont., for plaintiff.

S. C. Ford, Atty. Gen. of Montana, Frank Woody, Asst. Atty. Gen. of Montana, and C. H. Foot and T. H. MacDonald, both of Kalispell, Mont., for defendant.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The Northern Pacific Railway Company brought an action in three counts against the county treasurer of Flathead county, Mont., to recover money paid under protest for taxes on lands of the company for the years 1914, 1915, and 1916. The court below entered a judgment on the pleadings on behalf of the railway company on the first two causes of action, and a judgment for the defendant on the third cause of action, holding that at the time of the assessment of the taxes for 1914 and 1915 the lands of the railway company had not been surveyed, but that they had been surveyed at the time of the assessment for 1916. The railway company by writ of error seeks to review the judgment on the third cause of action, and the county treasurer brings a writ of error to review the judgment on the first two causes of action.

[1] The contention that the court below erred in ruling in favor of the railway company on the first two causes of action cannot be sustained. In consequence of the decision in N. P. Ry. Co. v. Traill

County, 115 U. S. 600, 6 Sup. Ct. 201, 29 L. Ed. 477, holding that until the railroad company shall have paid into the treasury of the United States the cost of surveying, locating, and conveying the lands granted to it in aid of railroad construction the lands are exempt from state or territorial taxation, Congress passed Act July 10, 1886, c. 764, 24 Stat. 143 (Comp. St. 1916, § 4883), providing as follows:

"No lands granted to any railroad corporation by any act of Congress shall be exempt from taxation by states, territories, and municipal corporations on account of the lien of the United States upon the same for the costs of surveying, selecting, and conveying the same, or because no patent has been issued therefor; but this provision shall not apply to lands unsurveyed," etc.

By the statutes of Montana it is only property which has a taxable status on 12 o'clock noon on the first Monday in March of each year that may be taxed for that year. It was shown in the pleadings that for all the lands involved the field work for surveying was done prior to the first Monday in March, 1914, but that the plats were not approved by the surveyor general of Montana until June 12, 1915, and that none of the plats of the surveys was approved by the Commissioner of the General Land Office until December 17, 1915, and that the approved plats were not filed in the local land office until March 8 and March 15, 1916. It follows that at the time of the assessments for the years 1914 and 1915 the survey of the lands involved had not been completed, and therefore the lands had not then been identified, so as to be rendered subject to taxation.

[2] The railroad company contends that the surveys had not been completed on the first Monday in March, 1916, for the reason that at that time the approved plats had not been filed in the local land office. The purpose of the act of July 10, 1886, was simply to remove an obstacle to the taxation of railroad lands that had been surveyed. The express exclusion of unsurveyed lands from the operation of the act was unnecessary and superfluous, because of course the United States had no lien for the cost of surveys on unsurveyed lands. In United States v. Morrison, 240 U. S. 192, 210, 36 Sup. Ct. 326, 60 L. Ed. 599, the court discussed the question whether prior to an authorized withdrawal for forestry purposes there had been a survey, and said that the surveying of the public lands is an administrative act, confided to the control of the Commissioner of the General Land Office, under the direction of the Secretary of the Interior, and that it was competent for the Commissioner to direct how surveys should be made, and to require that they should be subject to his examination and approval, "before they were filed as officially complete in the local land office." This was not to say that a survey was not officially complete at any time prior to the filing thereof in the local land office. It may fairly be inferred from other language of the opinion that a survey is officially complete from the time when the last administrative act is done, namely, the approval of the survey by the Commissioner, for on page 211 the court said that:

"The approval of the surveyor general of Oregon did not make the survey complete as an official act. It still remained subject to the examination and approval of the Commissioner."

It is to be conceded that public lands are not regarded as legally surveyed in such a sense as to open them to selection, location, sale, or other disposition until the approved survey is filed with the local land office; but this is not for the reason that the approval of the Commissioner is insufficient to render the survey complete, but for the reason that the local land office has no jurisdiction to deal with lands as surveyed until it has on file the necessary records.

A different principle is involved in determining whether land granted to a railroad company is vested in the company at the time when its property becomes assessable for taxes. For the purposes of taxation, it should be held that lands are surveyed when they are identified; that is to say, when the survey thereof is finally approved. The grant to the railroad company was a grant in præsenti, but title did not vest in any particular tract of land until the same was identified by a government survey. So far as the decisions have gone, the survey and the approval of the survey have been uniformly recognized as the conditions precedent to the vesting of title so as to render lands subject to taxation. 37 Cyc. 868; Clearwater Timber Co. v. Shoshone County (C. C.) 155 Fed. 612; Robertson v. Sewell, 87 Fed. 536, 31 C. C. A. 107; Bird Timber Co. v. Snohomish County, 81 Wash. 416, 143 Pac. 433; Upshur v. Pace, 15 Tex. 531. Said the court in Wisconsin Railroad Co. v. Price County, 133 U. S. 496, 505, 10 Sup. Ct. 341, 344 (33 L. Ed. 687):

"When the government has ceased to hold any such right or interest in the property as to justify it in withholding a patent from the donee or purchaser, and it does not exclude him from the use of the property, then the donee or purchaser will be treated as the beneficial owner of the land, and the same be held subject to taxation as his property."

There is no force in the suggestion that the filing of the plat of the survey marks the limit of the Commissioner's power to disapprove the survey and order another. He has the same power and to the same extent, both before and after the filing of the plat in the local land office. The filing of the plat does not abridge or affect it. Knight v. United States Land Ass'n, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974.

Two decisions of the Department of the Interior are cited to sustain the contention that a survey is not complete until the plat thereof is actually filed in the local land office. The first is F. A. Hyde & Co., 37 Land Dec. 164. All that was ruled in that case was that the survey of certain school lands granted to the state of California was not complete until the plat of the survey "was approved by the Commissioner of the General Land Office." Said the Assistant Secretary:

"Proceedings for survey of public lands have not been regarded as complete, or public lands as surveyed and subject to disposal, until approval of the plat of survey by the Commissioner of the General Land Office."

The other citation is Anderson v. State of Minnesota, 37 Land Dec. 390, ruling that public lands are not surveyed until the approved plat of survey thereof is officially filed in the local land office. This ruling was made with special reference to the right of an applicant to make homestead entry on the surveyed land, and the circular of the Gen-

eral Land Office of January 25, 1904, was cited, which provides as
follows:

"Hereafter, when an approved plat of the survey of any township is transmitted to the register and received by the surveyor general, they will not regard such plat as officially received and filed in their office until the following regulations have been complied with: (1) They will forthwith post a notice in a conspicuous place in their office specifying the township that has been surveyed, and stating that the plat of survey will be filed in their office on a day to be fixed by them and named in the notice, which shall not be less than thirty days from the date of such notice, and that on and after such day they will be prepared to receive applications for the entry of lands in such township."

On the first Monday in March, 1916, these lands had been identified.
The surveys had been made, and the last administrative act had been
done to complete them. The only thing that remained to be done was
to place the file mark of the local land office on the approved plats.
It appears from the circular of January 25, 1904, that the plats thus
finally approved must have been in the possession of the local land
office 30 days before they were filed, and consequently they were there
before the first Monday in March, 1916. Said the court in Wells
County v. McHenry, 7 N. D. 246, 252, 74 N. W. 241, 243, referring to
the situation before the enactment of the act of 1886:

"The extraordinary spectacle was presented of a recipient of governmental
bounty escaping one just obligation to the state because it had failed to discharge another obligation to the general government. The statute passed to
wipe out such an inequitable rule should be given a liberal construction—one
which will carry out the purpose of Congress to compel the company to pay
taxes when they are justly due."

The judgment is affirmed.

ROSS, Circuit Judge (dissenting in part). I dissent from that portion of the opinion respecting the third cause of action set out in the
complaint, and am of the opinion that the plaintiff in the case was
entitled to a like recovery on that count as on counts 1 and 2, being
of the opinion that under the decision of the Supreme Court in the case
of United States v. Morrison, 240 U. S. 192, 36 Sup. Ct. 326, 60 L.
Ed. 599, the survey of the public lands therein described was not a completed act until the approved plat thereof was filed in the local land
office, and that, as the government survey of the lands was not a completed act at the time of the levy of the assessment, the lands involved
in the third count were not then segregated from the public domain,
which segregation I understand to be essential to any authority of the
state to tax them. Northern Pacific Ry. Co. v. Traill County, 115 U.
S. 600, 6 Sup. Ct. 201, 29 L. Ed. 477.