.(89 N. W. Rep. 855.)

---

### William H. Arnett *vs.* Elmer E. Smith.

---

#### Equitable Issues Interposed to Action at Law.

When an answer interposed in an action at law presents issues which are cognizable only by a court of equity, proper practice

requires that the equitable issues shall be tried and determined by the court before submitting the common-law issues to the jury.

### Contract to Sell Land—Default—Tender.

Where the covenants in a written contract for the sale of real estate are mutual and dependent, the vendor's obligation to convey being dependent upon a cash payment and the execution of notes and a mortgage by the vendee, and time for perfecting title is not made of the essence of the contract, the vendee can place the vendor in default only by tendering performance on his part; and, in the absence of such tender, he is not entitled to rescind the contract and recover back payments made when the contract was executed.

### Accord and Satisfaction.

In order to establish the extinction of the obligations of a written contract by an accord and satisfaction, it is not enough to merely show an oral agreement to render satisfaction at a future date. The accord must be executed by a delivery and reception of the thing agreed to be accepted in satisfaction.

### Specific Performance.

The defendant, through an equitable defense and counterclaim, seeks to compel the plaintiff to specifically perform his covenants contained in a written contract wherein the plaintiff agreed to purchase and the defendant to sell and convey certain real estate owned by the latter. It is *held*, on the facts stated in the opinion, that the contract was not rescinded by plaintiff; neither was there a mutual rescission. *Held*, further, that a certain oral settlement referred to in the opinion did not amount to an accord and satisfaction, and was without legal effect upon the rights and obligations of the parties as evidenced by the written contract. *Held*, further, that defendant had not been put in default by a tender of performance by plaintiff, and that defendant, who had fully complied with his covenants in said contract in seasonable time, and prior to the commencement of this action, was entitled to a decree of specific performance.

Appeal from District Court, Cass County; *Pollock, J.*

Action by William H. Arnett against Elmer E. Smith. Judgment for defendant, and plaintiff appeals. Affirmed.

*Pierce & Von Neida* and *Ball, Watson & Maclay,* for appellant.

*Turner & Lee* and *Morrill & Engerud,* for respondent.

YOUNG, J. Action upon an account stated. The defendant denies that an account was ever stated between the parties, and further denies that he is indebted to the plaintiff in any sum whatever. As a further defense, and by way of counterclaim, he asks that the plaintiff be compelled to specifically perform his covenants contained in a written contract for the purchase of certain real estate situated in Cass county. The plaintiff claims that the written contract referred to was superseded by a settlement between the parties and his cause of action is based upon a balance claimed to be due upon such alleged settlement. To properly understand the issues which were presented to the trial court for determination, it will be necessary to state the substance of the pleadings: Plaintiff, for cause of action,

alleges that on the 5th day of July, A. D. 1900, an account was stated between the plaintiff and defendant, and upon such statement a balance of $475 was found due to the plaintiff from the defendant; that the defendant agreed to pay the same on the 5th day of August thereafter, and that he has not paid the same, nor any part thereof. The defendant challenges the allegations of the complaint by a general denial, and alleges that on the date of the so-called settlement a written contract was in existence between the parties; that plaintiff, either fraudulently and falsely or by reason of his mistake as to the rights of the parties under such contract, claimed that defendant was in default in the performance of said contract, and claimed that he had a right to rescind the same; that plaintiff fraudulently or falsely influenced the defendant to believe that he was in default, and while so influenced, and without default or negligence on his part, he "was induced to enter into negotiations for a settlement of his supposed liability to plaintiff by reason of his supposed breach of said contract, but said negotiations were never completed or executed"; that immediately upon the discovery of his legal rights under the contract he notified the plaintiff that he would insist upon carrying out the terms of the written contract. The defendant further answering, and by way of counterclaim, alleged that on the 23d day of May, A. D. 1900, he was, and ever since has been, the owner of the following described real estate, towit, the S. ½ of section No. 31, in township 141 N., of range 49 W.; that on said last-named date the plaintiff and defendant entered into a written contract whereby defendant agreed to sell and plaintiff agreed to purchase the land above described upon the conditions and terms stipulated in said contract, which contract was attached to and made a part of the answer; that on the 2d day of June, A. D. 1900, defendant tendered to the plaintiff an abstract of title and a warranty deed to said premises at Pontiac, in the state of Illinois, as agreed in the contract, but that plaintiff then and ever since has refused to accept the same, and to pay the purchase money specified in said agreement, and to execute the notes and mortgage in said agreement described. Defendant further alleges that on the 25th day of August, A. D. 1900, and prior to the commencement of this action, he again tendered to plaintiff the abstract and deed to said premises, and that the plaintiff again and still refuses to make the payment and execute the notes and mortgage as agreed in said contract; that the defendant now is, and at all times has been, able, ready, and willing to perform the conditions of said contract then to be performed, and prays for judgment directing the plaintiff to perform his covenants in said contract of purchase. The contract in question, so far as material, is as follows: "Articles of agreement, made this 23d day of May, in the year of our Lord one thousand and nine hundred, between Elmer Smith, a single man, party of the first part, and William H. Arnett, of the second part, witnesseth: That the said party of the first part hereby covenants and agrees that, if the party of the second part shall make the payments and perform the covenants hereinafter mentioned on his part

to be made and performed, the said party of the first part will convey and assure to the party of the second part in fee simple, clear of all incumbrances whatsoever, by a good and sufficient warranty deed, the following lot, piece, or parcel of land in Cass county, North Dakota, to-wit. [Here follows a description of the land.] Said party of the first part agrees to deliver an abstract of title showing a good merchantable title to the above-described premises, and the said party of the second part hereby covenants and agrees * * * to pay to said party of the first part the sum of eight thousand nine hundred and twenty dollars in the manner following: Five hundred dollars cash in hand, the receipt whereof is hereby acknowledged, and the balance as follows, viz.: $2.500 June 2nd, 1900, to be deposited with the National Bank of Pontiac, Illinois, until delivery of deed and contract; $1,560 November 1st, 1900, on or before; $1,000 November 1st, 1901, on or before; $1,000 November 1, 1902, on or before; $1,000 November 1st, 1903, on or before; $1,360 November 1st, 1904, on or before,—with interest at the rate of six per cent. per annum, payable annually, on the whole sum remaining from time to time unpaid. * * * Deed to be given and mortgage taken to secure the balance of the purchase price on payment of $3,000 and interest, being the amount due June 2nd, 1900. Upon the delivery of the deed and the acceptance thereof by the second party, said second party is to have full and absolute possession of the above premises, with all of the appurtenances thereto belonging including all growing crops for the season of 1900." The plaintiff, in his reply, admitted the execution of the contract, but denied that the defendant had tendered the deed and abstract to him on June 2, 1900, or at any time prior to the 5th day of July, 1900, as stipulated in said contract, and alleged that the abstract which was submitted and tendered on June 2, 1900, was not sufficient, in this: That it did not disclose a good and merchantable title in the defendant; that on the 26th day of June, 1900, he notified the defendant that he then rescinded said contract because of defendant's failure to deliver an abstract showing a merchantable title, and demanded the repayment of the $500 theretofore paid by him on the purchase price; that thereafter, and on the 5th day of July, 1900, the subject-matter of said written contract was settled between the plaintiff and the defendant, and an account stated, as alleged in plaintiff's complaint. A jury was called to try the case. At the close of the testimony, upon motion of the defendant's counsel, a verdict was directed against the plaintiff upon his cause of action. Thereupon the court proceded to try the issues presented by the equitable counterclaim and the plaintiff's reply thereto. Findings of fact and conclusions of law were made and filed favorable to the defendant, upon which a decree of specific performance was subsequently entered as prayed for by the defendant. Thereafter the plaintiff moved for a new trial upon a settled statement of the case. This was overruled. Plaintiff has appealed from the order denying his motion, and has also taken a separate appeal from the judgment. The last-named appeal is taken upon the judg-

ment roll proper. A new trial is not demanded in this court, the errors relied upon being assigned upon the statutory judgment roll. The two appeals are presented together.

No questions of practice are presented by counsel for either party. Nevertheless we deem it proper to state that correct practice requires that the equity issues presented by the defendant's answer should have been first tried and determined by the court. Had this been done, no issue of fact would have been left for the jury, and we would not be embarrassed by the anomalous record here presented. The established procedure is that, "when an equitable defense is presented, it is to be decided by the court as if it were an equitable proceeding, before other issues are determined, because the determination of the equitable issues in favor of the defendant would put an end to the litigation, and obviate the necessity of trying the legal issues involved." 7 Enc. Pl. & Prac. 810, 811, and cases cited. It will be seen that plaintiff's legal theory is that the written contract of May 23d was entirely superceded and annulled by the subsequent oral contract of July 5th, and that such oral contract is valid and binding upon both parties. If this position is legally sound, it will be conceded that the court erred in directing a verdict against the plaintiff and in decreeing a specific performance of the contract. But if, on the other hand, the written contract was not superceded by the oral contract, in that event it will be conceded that the verdict was properly directed, and the judgment of the trial court was proper. The facts which we deem material to a solution of the questions presented are not in dispute. Wyman & Ball, real estate agents at Fargo, acted as defendant's agents in selling the land to plaintiff. Before forwarding the deed and abstracts of title to plaintiff, they submitted it to their attorneys, Ball, Watson & Maclay, for an opinion, but did not submit a copy of the contract. The abstract so submitted among other things showed a tax deed, executed by the county treasurer of Cass county in December, 1885, for the 1882 taxes, running to one Charles P. Hazeltine, and duly recorded on December 19, 1885. The abstract further showed that the defendant's grantor, one Seth G. Wright, derived his title by a foreclosure of a mortgage, in which it appears that one Charles P. Hazeltine was made a party defendant, service upon him being by publication. The attorneys to whom the abstract was referred for examination gave a written opinion thereon, in which they stated, after referring in detail to the several conveyances in the defendant's chain of title, that: "We are of the opinion that the present legal title to this property is vested in Elmer E. Smith. * * * We do not consider the tax sale made for taxes levied on the land for the year 1885 to constitute any lien, for the reason that said land was a part of the grant of the Northern Pacific Railroad Company, the survey fees were not paid thereon, and such taxes were null and void. *Railroad Co. v. Rockne,* 115 U. S. 600, 6 Sup. Ct. 201, 29 L. Ed. 477." On May 31, 1900, Wyman & Ball sent the abstract, together with the defendant's warranty deed, by registered mail, to the National Bank of Pontiac, and inclosed

therewith five blank notes and a mortgage deed to be executed by the plaintiff pursuant to the terms of the contract. In their letter of transmittal they stated that the title had been examined, and that it was absolutely perfect, and inclosed the written opinion of their attorneys. On June 4, 1900, the bank acknowledged the receipt of the papers, and stated that Mr. Arnett and his attorney were examining the title. On the following day—June 5th—the bank returned the abstract to Wyman & Ball, with a specification of a number of particulars wherein Arnett's attorney considered that it failed to show merchantable title, with a request that such requirements be complied with, and that the abstract, when completed and correced, be returned. One of the objections pointed out was the tax deed to Hazeltine. On June 11th Wyman & Ball returned the abstract to the bank, corrected in the particulars specified, save as to the tax deed. In their letter of transmittal they stated on this point that "none of this land being the N. P. Railroad grant was taxable before the year 1888." The abstract was handed by Arnett to his attorney for further examination, and on June 22d the same was returned to him with a written opinion pointing out that Charles P. Hazeltine, the holder of the tax deed, was not a party to the Wright foreclosure; and that, as "Charles P. Hazeltine was not identified with the tax deed by any findings in the decree, the rights of Charles P. Hazeltine are not determined." The next day—June 23d—Arnett wired Wyman & Ball: "Title not merchantable. Cannot wait longer. Demand return of money." He at the same time wrote Wyman & Ball as follows: "Since the title is not a merchantable one, and so much time has elapsed, I must call the deal off. You will please notify Smith to this effect. It will then be his duty to return the deposit of $500 made by me on the land." He also stated in the letter that a party who was to make him a loan refused to accept the title. Under the same date the bank wrote Wyman & Ball as follows: "With reference to the Arnett-Smith deal, will say that we had agreed to make Mr. Arnett a loan of several thousand dollars if his title was O. K., but we do not care to make a loan on this title in its present condition. Mr. Simmons' (Arnett's attorney's) comments herewith enclosed. I understand that Mr. Arnett refuses to wait longer. The deed and abstract are in our hands awaiting your order." Up to the time when the communications last referred to were received Wyman & Ball were acting for the defendant, Smith, under their original agency. Thereafter they acted on behalf of the plaintiff, Arnett, in carrying out his instructions, and lent to him their personal services for the purpose of procuring a settlement and rescission of the contract. On June 26th Wyman & Ball "notified defendant that plaintiff rescinded the contract because the title was not merchantable," and stated to him the contents of Arnett's letter, wherein he had stated that it was Smith's duty to return the $500 received by him when the contract was executed. They also requested and induced him to consult with the firm of Ball, Watson & Maclay to ascertain what effect the fact that the contract called for

and required him to give a merchantable title would have upon the rights of the parties. This request was complied with, and the defendant was advised that the title was probably not merchantable, and that it would have to be passed upon by the courts, and that the chances were decidedly against its being held merchantable. Between June 26th and July 5th a number of conversations were had between the members of the firm of Wyman & Ball and the defendant concerning the contract, with the result that the defendant became entirely convinced that he was in default, and that the plaintiff had the right to rescind, as he had attempted to do, and that the defendant was under a legal obligation to repay the $500 theretofore received by him on the purchase price. To facilitate a settlement, the firm of Wyman & Ball conditionally promised to procure a concession of $25 for moneys expended by the defendant in attempting to perfect the sale, which sum covered canceled revenue stamps and the cost of abstract of title. This condition was assented to by the defendant, and he expressed a willingness and anxiety to settle for the sum of $475, and orally promised Wyman & Ball to pay the sum of $475 in one month, but expressly refused to give a note for said sum, as requested by them. On July 5th the plaintiff came to Fargo, and, after ascertaining the condition of the proposed settlement, called upon the defendant at his place of business, in company with Mr. Wyman. In the course of a brief conversation Smith stated that he had spent the $500 which he had received on the purchase price, and he could not then repay it without borrowing which he did not desire to do; that Mr. Wyman had agreed to discount the amount $25, to cover the expenses incurred by him, and, if he (Arnett) was willing to agree to this, the defendant would pay the $475 on August 5th thereafter. Arnett replied that this would be satisfactory. No further conversation was had. In a day or two thereafter the defendant, Smith, consulted the firm of Turner & Lee, his attorneys in the present action, in reference to his title and with reference to his obligations under the written contract. On or before August 5th Smith notified Wyman & Ball that he had decided not to pay the $475; that his attorneys had advised him that he could compel the plaintiff to comply with the written contract. Turner & Lee procured and caused to be recorded a quitclaim deed from Charles P. Hazeltine and wife to the defendant, covering the defect as to the tax deed before referred to, and had the abstract extended to show such correction, with certain other corrections, which need not be mentioned. On the 25th day of August said attorneys, acting on behalf of the defendant, sent to the bank at Pontiac the deed theretofore executed, together with a mortgage and notes for execution by plaintiff, accompanied with a corrected abstract, which concededly showed perfect and merchantable title, with the direction that the deed be delivered to plaintiff upon his making the required payment and executing the notes and mortgage as provided in the written contract. On the same day they wrote to the plaintiff, asking him to call and examine the abstract, and demanded a perform-

ance of said contract. A similar letter was at the same time written to the plaintiff's attorney at Pontiac. The plaintiff then and at all times since declined to perform, relying entirely upon the alleged rescission and settlement which is the basis of his present cause of action.

The question presented for determination is whether the written contract was annulled and rescinded, and the subsequent oral agreement substituted in lieu thereof. Counsel for plaintiff contend that such was the legal effect of the facts narrated. We are not able to agree to this conclusion. We are of opinion that the facts do not show that Arnett at any time had the right to rescind the contract. Not having such right his attempted rescission was entirely abortive. It is entirely clear that there was no mutual rescission. We reach this conclusion without determining whether the abstract showed a merchantable title before the quitclaim deed was procured from Hazeltine. It is not disputed that the title tendered on August 25th which was prior to the commencement of this action, was perfect and merchantable. The covenants contained in the written contract were mutual and dependent. The defendant was obliged to furnish an abstract showing merchantable title as a condition precedent to his right to demand and receive payment and the notes and mortgage. The plaintiff, on the other hand, was bound to pay or tender the sum named in the contract, and to execute the notes and mortgage therein referred to, as a condition prerequisite to his right to demand and receive the title and conveyance bargained for. The contract did not place a fixed time limit within which the defendant must furnish the abstract showing merchantable title. In the absence of a stipulated time, the defendant was entitled to a reasonable time to perfect his title. After tender of performance by the plaintiff and demand for performance upon defendant, the plaintiff could place the defendant in default only by a proper tender of performance on his part. This he did not do. The notes were not signed; neither was the mortgage executed; nor was the $2,500 required to be paid deposited in the bank so as to be available to the defendant in case the abstract showed the title to be merchantable, nor was it tendered to the defendant. Had the plaintiff brought an action to recover the $500 paid by him to the defendant, basing his cause of action upon the alleged defaults of the defendant, his complaint would not have stated a cause of action, in the absence of an averment of full performance or offer of performance on his part. On this point there seems to be no conflict of authority. *Englander* v. *Rogers,* 41 Cal. 420; *Dennis* v. *Strassburger,* 89 Cal. 583, 26 Pac. Rep. 1070; *Bakeman* v. *Pooler,* 15 Wend. 637; *Strong* v. *Blake,* 46 Barb. 227; *Dunham* v. *Jackson,* 6 Wend. 22, 35; *Johnson* v. *Reed,* 9 Mass. 78, 4 Am. Dec. 36; 2 Warv. Vend. p. 880, § 32. Furthermore, had the plaintiff made a proper offer of performance, and a demand upon the defendant for the delivery of an abstract showing merchantable title, nevertheless he would not have had the right to immediately rescind. In cases where the contract does not

fix a time limit for perfecting title the vendor is entitled to a reasonable time after notice of defects in which to perfect his title or remedy any defects therein, and not until the giving of such notice, and an offer to perform the contract on the purchaser's part upon receiving a perfect title, and the refusal of the defendant thereafter to convey as agreed, would a purchaser have a right to rescind the agreement. *Anderson* v. *Strassburger,* 92 Cal. 38, 27 Pac. Rep. 1095. As was said by the court in *Andrew* v. *Babcock,* 63 Conn. 109, 26 Atl. Rep. 715: "The established principle is that, where a contract is entered into in good faith, and time is not of its essence, and is not made material by the offer to fulfill by the other party and a request for a conveyance, the vendor will be allowed reasonable time and opportunity to perfect his title, however defective it may have been at the time of the agreement. All that is necessary is that the plaintiff is able to make the stipulated title at the time when, by the terms of the agreement, or by the equities of the particular case, he is required to make the conveyance to entitle himself to the consideration." *Easton* v. *Montgomery,* 90 Cal. 307, 27 Pac. Rep. 280, 25 Am. St. Rep. 123; *Moore* v. *Smedburgh,* 8 Paige, 600; *Dressel* v. *Jordon,* 104 Mass. 407; *Mitchell* v. *Allen,* 69 Tex. 70, 6 S. W. Rep. 745; *Dodson* v. *Hays,* 29 W. Va. 577-594, 2 S. E. Rep. 415; *Logan* v. *Bull,* 78 Ky. 607. It follows, necessarily, from an application of the foregoing principles to the facts of this case, that plaintiff's effort to rescind the contract was entirely unavailing, and without legal effect.

We may now inquire whether there was a mutual rescission by the parties when they met in Fargo on July 5th. The facts negative of any such conclusion. Mutual rescission implies that the minds of the parties met with the common desire and purpose to cancel the mutual obligations of the written contract. It is true the record shows that the plaintiff has at all times been desirous of being relieved from the contract, but the reverse is true as to the defendant. He has at all times been willing and anxious to complete the same, and at no time has he desired to rescind. The oral agreement of July 5th did not, in terms, relate to a rescission of the written contract. Prior to that time the defendant had been convinced by the plaintiff's agents that he (the defendant) was in default, and that he was legally obligated to repay to the plaintiff the $500 which he had received upon the purchase price. The defendant's promise of July 5th was based upon this supposed liability, and had reference to nothing else. The defendant then believed that he had forfeited his rights under the contract, and that plaintiff had a lawful right to the repayment demanded. These facts do not show a mutual rescission.

Plaintiff's counsel further contend that the oral promise of the defendant on July 5th operated as an accord and satisfaction of all matters connected with the written contract, and that, in legal effect, it superseded it. To this contention we cannot agree. As before

stated, the only matter in contemplation between the parties was the adjustment of the supposed money liability of the defendant, and nothing else. If the transaction could be termed an accord and satisfaction, it would be applicable only to the matter then being adjusted, which was, as stated, the defendant's liability to repay the $500 formerly received. But, conceding that the alleged settlement extended to all features of the written contract, nevertheless we are agreed that it did not amount to an accord and satisfaction. "An accord is an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled." Section 3824, Rev. Codes. "Though the parties to an accord are bound to execute it, yet it does not extinguish the obligation until it is fully executed." Section 3825, Id. "Acceptance by the creditor of the consideration of an accord extinguishes the obligation and is called satisfaction." Section 3826, Id. The foregoing sections are merely a legislative declaratation of the common law. The supreme court of South Dakota in referring to and construing these sections, which are embodied in § § 3483-3485, Comp. Laws, in force in that state, in *Carpenter* v. *Railway Co.*, 64 N. W. Rep. 1120, said: "To establish a plea of accord and satisfaction under the statutory or common law, it must not only appear that there was an agreement to accept, in full settlement of an obligation, something different from or less than that to which one of the parties is entitled, but it must be shown that such agreement has been fully executed, and the obligation extinguished by the creditor's actual acceptance of the consideration specified in the agreement constituting an accord." See cases cited in opinion, which fully sustain the text above quoted. As was said by Mitchell, J., in *Hoxsie* v. *Lumber Co.*, 41 Minn. 548, 43 N. W. Rep. 476: "There must be a satisfaction as well as an accord. The accord agreement must be fully executed, and the thing to have been taken must have been received and accepted in satisfaction, in order to constitute a bar to a recovery." An accord is executory as long as something remains to be done in the future. It is sufficiently executed only when all is done which the party agrees to accept in satisfaction of the pre-existing obligation. *Bragg* v. *Pierce*, 53 Me. 65; *Therasson* v. *Peterson*, *41 N. Y. 636; *Babcock* v. *Hawkins*, 23 Vt. 561; *Edwards* v. *Bryan*, 88 Ga. 248, 14 S. E. Rep. 595; *Memphis* v. *Brown*, 20 Wall. 289, 22 L. Ed. 264, 268; 2 Smith, Lead. Cas. 149, 150, 385, 389; *Line* v. *Nelson*, 38 N. J. Law, 358; *Tilton* v. *Alcott*, 16 Barb. 598; *Russell* v. *Lytle*, 6 Wend. 391, 22 Am. Dec. 537; *Daniels* v. *Hallenbeck*, 19 Wend. 408; *Young* v. *Jones*, 64 Me. 563, 18 Am. Rep. 279; *Cushing* v. *Wyman*, 44 Me. 121; *Bank* v. *De Grauw*, 23 Wend. 342, 35 Am. Dec. 569; 1 Beach, Mod. Cont. § 437. As was said by the court in *Kromer* v. *Heim*, 75 N. Y. 574, 31 Am. Rep. 491: "Where the performance of the new promise was the thing to be received in satisfaction, then, until performance, there is not complete accord, and the original obligation remains in force." In the case under con-

sideration there was an agreement by the plaintiff to receive the sum of $475 in full discharge of his claim of $500, and a promise to pay said sum by the defendant 30 days thereafter. This amounted to an accord executory. But, as we have seen, a mere accord is not sufficient. There must be a satisfaction, to render it effective; that is, the reception of the thing agreed to be received. In this case the thing agreed to be received in satisfaction was the sum of $475, which the defendant declined to pay. It follows from what we have said that the oral agreement of July 5th did not supersede the written contract, or, in legal effect, alter the rights and liabilities of the parties thereunder in any way whatever. But we think the alleged settlement was without legal effect for another reason. The defendant's consent thereto was necessary to give it validity. True, he gave an apparent consent. But such consent was not free, for it was clearly given under a mutual mistake of law. It is apparent that the defendant agreed to make repayment under the belief that under the law he had forfeited all his rights under the written contract, and it is apparent that this belief was induced by the plaintiff. The mistake as to their legal rights was mutual. Upon this state of facts the defendant's consent was not free, and was subject to be rescinded, and that he did rescind is not disputed. See § § 3836, 3841, 3843, 3844, 3854, Rev. Codes.

The conclusion follows necessarily from the views heretofore expressed that the written contract was and is in full force and effect, and that the defendant is entitled to have the same specifically performed. It is not material whether the abstract as originally presented showed merchantable title. The defendant not having been placed in default by a tender of performance by the plaintiff, any conclusion which we might reach upon the merchantability of the title as shown by the abstract first presented would not affect their legal rights as now presented, for the reason that the abstract furnished on August 25th, which was prior to the commencement of this action concededly showed perfect and merchantable title, such as defendant had agreed to give.

The order and judgment appealed from will be affirmed, and it is so ordered. All concur.