BERTHA M. COTTON v. J. C. BUTTERFIELD AND JOHN DEMARIS.

Opinion filed October 18, 1905.

**Where an Equitable Counterclaim Is Pleaded in an Action at Law, Issue Thereon Must Be First Tried.**

1. Where, in an action at law, the answer interposes an equitable counterclaim, the issues arising on the latter should be heard and determined by the court before a trial of the legal issues, as if the counterclaim were a separate suit in equity.

**Same — Final Determination.**

> 2. If the decree entered on the equity side of the case renders unnecessary the trial of any question arising on the law side, then such decree is the final determination of the action.

**Same — Cause Triable De Novo on Appeal.**

> 3. The cause of action was at law and the counterclaim in equity, but the issues on the equity side of the case involved all disputed questions on the law side. The action was tried as if both the cause of action and counterclaim were in equity. *Held,* that the case is triable de novo on appeal.

**Where There Is No Rescission by Vendee, Vendor Is Entitled to Specific Performance.**

> 4. Evidence examined, and *held,* that there has been no rescission by the plaintiff of her contract to buy defendants' land, and that the latter are entitled to specific performance thereof.

**Same — Deduction of Value of Use or Net Profits from Purchase Price — Decree.**

> 5. Where a decree of specific performance of a contract, under which the vendee is not entitled to possession until conveyance, is awarded to the vendor, who appears to have used some or all of the land after the time when, as determined by the decree, the conveyance should take effect, the value of such use or the net profits thereof, as the vendee may elect, will be deducted from the purchase price remaining unpaid.

Appeal from District Court, Emmons county; *Winchester,* J.

Action by Bertha M. Cotton against J. C. Butterfield and John F. Demaris. Judgment for plaintiff, and defendants appeal.

Reversed.

*Geo. W. Lynn* and *G. N. Williamson,* for appellants.

By commencing an action on the contract for damages, plaintiff ratified it, and by accepting said benefits under it, as were in his favor, will be held bound by all of its obligations. Sections 3864-3865, Rev. Codes 1895; Morris v. Ewing et al., 8 N. D. 99, 76 N. W. 1047; Wyckoff v. Johnson, 48 N. W. 837; Union Trust Co. v. Phillips et al., 63 N. W. 903.

Where a contract calls for the payment of a stipulated sum, and the execution of notes and mortgage for balance, a tender of all is necessary before the vendor can be put in default. Arnet v. Smith, 11 N. D. 55, 88 N. W. 1037.

Plaintiff can put defendant in default only by tender of performance on his part of his portion of the agreement. Englander v. Rogers, 41 Cal. 420; Dennis v. Strassburger, 26 Pac. 1070; Bakeman v. Pooler, 5 Wend. 637; Strong v. Blake, 46 Barb. 227; Dunham v. Jackson, 6 Wend. 22, 35; 2 Warv. Vend., p. 880, section 32.

Under a contract where time is not of its essence, and is not made material by the offer of the other party to fulfill and a request for a conveyance, the vendor will be allowed a reasonable time and opportunity to perfect his title, however defective it may have been at the time of the agreement. Anderson v. Strassburger, 92 Cal. 38, 27 Pac. 1095; Easton v. Montgomery, 27 Pac. 280; More v. Smeburgh, 8 Paige, 600; Mitchell v. Allen, 6 S. W. 745; Dodson et al. v. Hays et al., 2 S. E. 415; Logan v. Bull, 78 Ky. 607; Dresel v. Jorden, 104 Mass. 407.

*H. A. Armstrong* and *F. H. Register,* and *I. C. Fenninger,* of counsel, for respondents.

Vendor cannot have specific performance, although court of appeals approves title, if vendee in good faith is not satisfied with it. 22 Am. & Eng. Enc. Law, 962; Averett v. Liscombe, 76 Va. 404.

Vendee has the right not only to a good, but to an indubitable title, and one that exposes him to litigation is not a marketable title. Swayne v. Leyon, 67 Pa. St. 436; Emmert v. Stouffer, 94 Md. 543.

It was incumbent upon defendants to furnish abstract of title satisfactory to plaintiff within the time designated by the contract of purchase, and a good and sufficient warranty deed conveying the land to plaintiff, on deposit with their depository, when she notified the latter on the day fixed by the contract that she was ready and willing to perform her part. The law will not require of plaintiff the performance of an idle act as a condition precedent to her right to rescind. Primm v. Wise & Stern, 102 N. W. 427; Bartle v. Curtis, 68 Iowa, 202; Goetz v. Walters, 34 Minn. 241; Gregory v. Christian, 42 Minn. 304; Hopwood v. Corbin, 63 Iowa, 218; Clark v. Weis, 87 Ill. 438; White v. Mann, 26 Me. 361.

Rescission may be made by him who has the right by notifying the other of his intentions. Mullin v. Bloomer, 11 Iowa, 360; Tilfield v. Adams, 3 Iowa, 487; Mahoney et al. v. Gano, 27 N. E. 315; Thompson et al. v. Peck et al., 18 N. E. 16.

The rule that the institution of legal proceedings for the recovery of the consideration effects a rescission, applied to contracts of sale. Mahoney et al. v. Gano et al., 27 N. E. 315.

Parties may introduce into their contract an agreement, that upon failure of one to fulfill, the other may treat it as void. 3 Am. & Eng. Enc. Law, 893.

A void contract needs no rescission. Wright v. Dickenson, 35 N. W. 164.

If a party seeking specific performance has been guilty of gross negilgence in performing the contract on his part, and there has arisen a material change of circumstances affecting the rights, interests and circumstances of the parties, a court of equity will refuse a specific performance. Callan v. Ferguson, 29 Pa. St. 247; 2 Am. & Eng. Enc. Law, 1029; Dubois v. Baum, 46 Pa. St. 537.

If to compel specific performance will work injustice or hardship, it will not be ordered. 22 Am. & Eng. Enc. Law, 1028; Eaton v. Eaton, 64 N. H. 403; Rushton v. Thompson, 35 Fed. Rep. 635; Society, etc., v. Butler, 12 N. J. Eq. 498.

ENGERUD, J. Plaintiff brought this action in district court to recover a sum of money which she claims to be entitled to by reason of the alleged failure and refusal of defendants to perform a contract for the sale by them to her of a farm. The answer, besides putting in issue some of the facts constituting the plaintiff's cause of action, pleaded a counterclaim for the specific performance of the contract, upon which the plaintiff based her cause of action, and the plaintiff replied. The action was tried by the court without a jury, and resulted in a judgment for plaintiff. Defendants have appealed from the judgment, and in addition to a demand for a new trial of all the issues, under section 5630, Rev. Codes 1899, numerous specifications of errors have been incorporated in the settled case, aimed at certain alleged errors of law at the trial, and also challenging the sufficiency of the evidence to sustain the findings. The action was tried after the taking effect of chapter 201, p. 277, Laws 1903, amending section 5630, so as to exclude from its operation cases "properly triable with a jury." The complaint states a cause of action at law for the recovery of money only, and hence, to the extent of the issues arising on the complaint and the defensive parts of the answer, the action was one properly triable with a jury. The issues arising on the counterclaim and reply, however, were equitable, and were properly triable by the

court without a jury. We are therefore confronted with a question as to the extent of our jurisdiction on this appeal. Is the action one "properly triable without a jury," to be heard and determined under the provisions of section 5630, or are we limited to a review of errors only as in jury cases?

In this case the adjudication of the issues arising on the counterclaim and reply necessarily determine all the disputed facts essential to plaintiff's right to recover. As pointed out in Arnett v. Smith, 11 N. D. 55, 88 N. W. 1037, which was a case very similar to this, "the established procedure is that, when an equitable defense is presented, it is to be decided by the court as if it were an equitable proceeding before other issues are determined, because the determination of the equitable issues in favor of the defendant would put an end to the litigation and obviate the necessity of trying the legal issues involved." That statement of the rule is, perhaps, too broad. It is more correct to say that the equitable issues should be first heard and disposed of by the court, as in a suit in equity, when the answer presenting such a defense is in the nature of a bill in equity containing the essential averments of such a pleading, and requiring the interposition of a court of equity to afford the relief sought. Estrada v. Murphy, 19 Cal. 248, 272; Lombard v. Cowham, 34 Wis. 486; Du Pont v. Davis, 35 Wis. 631. This case comes fully within that rule. The issues on the counterclaim and reply were to be first tried and disposed of by the court in the same manner as if the counterclaim were the complaint in an action commenced by the defendant. The equity side of the case should proceed to a final decree. The contents of that decree would determine whether all the issues on the law side of the case were foreclosed or not. If the decree left any part of the legal issues still open to litigation, then such issues are for trial as in a law action. Martin v. Zellerbach, 38 Cal. 300, 99 Am. Dec. 365, and cases supra. In this case, as already stated, the determination of the equitable counterclaim left nothing further to litigate, and hence the decree was the final determination of all the issues in the action. In such a case as this, the amount of plaintiff's recovery would be an issue triable by a jury if the amount were in dispute; but the pleadings admit the amount and date of the payment of the $500 which plaintiff recovered. Plaintiff concedes that the recovery of this sum was all she was entitled to. All questions arising on the law side of the case were eliminated by the trial of the equity side, and hence it seems clear to us that this appeal

is from a final judgment in an action properly triable without a jury, and is here for trial de novo.

In passing, however, it may be well to call attention to the erroneous practice pursued in the trial of this case. When the case was called for trial, the plaintiff proceeded to introduce evidence in support of her cause of action, and the whole case was tried as if it were one triable under section 5630, both as to the cause of action in the complaint, and the counterclaim. In such a case as this, when the answer calls for a separate trial of the equitable issues, the trial should be confined to those issues alone, and the proceedings on the trial should be the same as if the defendant were plaintiff. Enc. Pl. & Pr. p. 811, and cases cited in note 2.

We come now to the merits of the case. As already indicated, the question to be decided on this appeal is whether or not the defendants have shown themselves entitled to a decree for specific performance of the contract in suit. It is unnecessary to set forth the pleadings. It is sufficient to say that the defendants allege the making of the contract hereinafter described, and that they have performed or offered to perform, and are now ready, able and willing to perform the same. The plaintiff claims that the defendant failed to tender performance within the stipulated time, and that the contract had been rescinded before defendants tendered performance. The contract is as follows:

"Received of Bertha A. Cotton Five Hundred no-100 dollars ($500.00) as earnest money and in part payment for the purchase of the following described property situated in the county of Emmons and State of North Dakota, viz: West half of section fifteen, east half of section ten, southeast quarter of section nine, all in township one hundred thirty-four, north of range seventy-six, west of 5th P. M. which I have this day through owners J. C. Butterfield and J. F. Demaris sold and agreed to convey to said Bertha A. Cotton for the sum of six thousand and eight hundred no-100 dollars ($6,800.00) on terms as follows, viz.: Five hundred no-100 dollars ($500.00) in hand paid as above, and $3,300.00 January 1st, 1903, with 8 per cent interest from date; $3,000.00 on or before January 1st, 1908, as stated below, payable on or before the dates as named above, or as soon thereafter as a warranty deed conveying a good title to said land is tendered, time being considered of the essence of this contract. And the above three thousand no-100 dollars shall be secured as follows: $1,500.00 first mortgage on E. ½ of Sec. 10-134-76. $550.00 first mortgage on N. W. ¼ of

Sec. 15-134-76. $550.00 first mortgage on S. W. ¼ of Sec. 15-134-76. $400.00 first mortgage on S. E. ¼ of Sec. 9-134-76. Interest at 8 per cent per annum from date. And it is agreed that if the title to the said premises is not good, and cannot be made good within thirty days from date hereof, this agreement shall be void, and the above title of above land shall rest upon abstract satisfactory to second party. Five hundred no-100 dollars ($500.00) refunded. But if the title to said premises is now [not?] good, in the names of J. C. Butterfield and John Demaris within thirty days, and said purchaser refuses to accept the same, said five hundred no-100 dollars ($500.00) shall be refunded to the said Bertha A. Cotton and contract null and void. But it is agreed and understood by all parties to this agreement, that said forfeiture shall in no way affect the right of either party to enforce the specific performance of this contract. Possession of above land to be given March 1st, 1903. Second party is to accept or reject abstracts within thirty days after delivery of abstracts to Emmons Co. State Bank, Braddock, N. Dak. J. C. Butterfield. [Seal.] John F. Demaris.

"I hereby agree to purchase the said property for the price and upon the terms above mentioned and also agree to the conditions of forfeiture and all other conditions therein expressed. Bertha A. Cotton, by F. H. Cotton, Agent."

The contract was not subscribed by the plaintiff personally, but her name was signed thereto by her husband, F. H. Cotton, who acted for and represented the plaintiff in all negotiations concerning the contract, both before and after the making of the agreement. Although there was no evidence of written authority from her to him to make the contract for her, yet the complaint itself is an express recognition of her husband's agency to make the agreement. After the contract was signed it was, by consent of both parties, left with H. W. Allen, the assistant cashier of the Emmons County State bank. In about two weeks thereafter, the abstract of title was furnished to plaintiff, and she submitted it to a firm of attorneys for their opinion. The attorneys gave a written opinion of the title. Neither the abstracts nor the opinion thereon are in evidence, and there is nothing to disclose the contents of the opinion, except that it pointed out defects in the defendants' record title to the land. There is nothing in the record disclosing what the defects were, but it is conceded that at the time of the commencement of this action the defendants had fully perfected their title. The attorneys' opinion was, on October 29th,

transmitted to the defendant Butterfield, with the following letter: "At Mr. F. H. Cotton's request, an opinion rendered to him upon the abstracts of title to certain lands owned in part by you is enclosed herewith. He wishes to say to you that he will take the land upon the terms agreed upon, if you will make the amendments and clear up the defects suggested in the opinion of the attorney. Yours truly, H. W. Allen, Ass't Cashier." Mr. Allen wrote this letter at the request of Mr. Cotton, who was acting for the plaintiff. Mr. Cotton testified that he told Allen that he would take the land provided the defendants could clear up the title and give a deed on or before January first, next; and that Mr. Allen was defendant's agent in all these negotiations. His testimony, however, as to Allen's agency was a mere conclusion, and incompetent as such, and it is very clear from the record that such was not in fact Mr. Allen's position. On the evidence as a whole it might be claimed with more reason that Allen was plaintiff's agent rather than defendants.' The view most favorable to the plaintiff is to consider Mr. Allen as a messenger between the parties, each employing him in turn to transmit communications to the other. It is apparent, therefore, that if Mr. Allen incorrectly transmitted the message, the consequences must fall upon the party who employed him.

It must be taken as a fact, therefore, that the plaintiff unconditionally elected to proceed with the execution of the contract, notwithstanding the defective title, instead of canceling or terminating the agreement and demanding the return of the earnest money, as she had a right to do under that clause of the agreement which made it optional with her to do so within thirty days after the abstracts were furnished. The view just expressed renders it unnecessary to consider whether or not the conditions which the plaintiff claims were part of the terms upon which she agreed to proceed further with the agreement would have any different effect on the rights of the parties than an unconditional election to proceed with the proposed purchase notwithstanding the defective title. In consequence of the letter of October 29th, the contract between the parties stood as if the provisions for a termination thereof at the option of plaintiff had never been made, because those provisions had been acted upon, and their purpose fully accomplished. After that date, then, the agreement on the part of the plaintiff was to buy the land and pay the balance of the purchase price, on the following conditions: $3,300 and interest at 8 per cent

per annum from the date of the contract, to be paid on or before January 1, 1903; and in settlement of the remaining $3,000, notes secured by mortgages were to be given in the several amounts, and secured on the respective tracts stated in the contract. These notes were to be made payable on or before January 1, 1908, and were to bear interest at 8 per cent per annum from their date. These notes and mortgages were to be executed and delivered on or before January 1, 1903, "or as soon thereafter as a warranty deed conveying a good title to said land is tendered. The stipulations with respect to the payment of the last $3,000 payable in notes are crudely expressed, but when read and construed with the contract as a whole, the meaning is clearly as we have above indicated. As to whether the $3,300 cash payment was payable unconditionally on or before January 1, 1903, or as plaintiff claims, the payment of this sum was, like the notes, to be made on or before that date, "or as soon thereafter as a warranty deed conveying good title to said land is tendered," it is unnecessary to decide. We may assume for the purpose of this case that the plaintiff's construction of this part of the contract is right. Adopting that construction, which is most favorable to plaintiff, we have substantially the same conditions as were presented in Arnett v. Smith, 11 N. D. 55, 88 N. W. 1037, with reference to which the court said, at page 62 of 11 N. D., page 1040 of 88 N. W.: "The covenants contained in the written contract were mutual and dependent. The defendant was obliged to furnish an abstract, showing merchantable title, as a condition precedent to his right to demand and receive payment and the notes and mortgage. The plaintiff, on the other hand, was bound to pay or tender the sum named in the contract, and to execute the notes and mortgage therein referred to as a condition prerequisite to his right to demand and receive the title and conveyance bargained for."

Under the contract in the case at bar, even if time were of the essence of the contract in that respect, the defendants were not required to convey until January 1, 1903. Long after that date the plaintiff continued to treat the contract as still in force. In the latter part of January the defendants sent to Mr. Allen for delivery a deed for the land executed by them. The deed was what is termed a special warranty deed, and plaintiff declined to accept it, because the warranties were not general and in the usual form. She did not put her rejection on the ground that it came too late, and her acts on this occasion can only be construed as a demand

for a better deed. Afterwards, without defendants' consent, plaintiff secured possession of the contract from Mr. Allen, and had it recorded in the office of the register of deeds. Negotiations continued by correspondence between the parties concerning the contract for some time apparently. Although the letters, or some of them, were in court, they were not offered in evidence, and we are not informed of their contents. There is no evidence that the plaintiff made an offer of performance, or took any steps to rescind. The only attempted proof of that nature consists of some loose statements to the effect that the plaintiff informed Allen that she was ready and willing to pay provided good title was furnished, and also told him that she wanted the earnest money returned to her, because the defendants had not furnished the deed in time. It does not appear, however, that these statements were ever communicated to the defendants. It is needless to say that such testimony was not sufficient to show a rescission, or even an offer of performance, which was a condition precedent to the right to rescind. Arnett v. Smith, 11 N. D. 55, 88 N. W. 1037. There is nothing to indicate that the plaintiff could not have had possession of the land if she had so desired on March 1, 1903. Neither is there any evidence from which we would be warranted in holding that the defendants had been unreasonably dilatory in perfecting their title. It is conceded that the title was perfect when this action was commenced, and that defendants have tendered full performance. We think the decision in Arnett v. Smith, 11 N. D. 55, 88 N. W. 1037, is decisive of this case, and that the defendants are entitled to have the contract specifically performed.

One point more remains to be noticed. There is no evidence as to whether the land in question is occupied or not. There is an allegation in the counterclaim, however, to the effect that after plaintiff's refusal to perform the contract defendants plowed and seeded to grain the cultivated parts of the land, and that they did this in order to prevent a depreciation of its value, which would result if the cultivated land was permitted to remain uncultivated. There is a prayer for an accounting, and for compensation for the expense so incurred. No mention was made of this feature of the pleading in the court below so far as the record discloses, and it has not been referred to by either counsel in this court. Inasmuch, however, as the counterclaim discloses that some part of the land was used by the vendors after the time

when, if the contract had been performed, the plaintiff was entitled to possession, we think we should take notice of the point. The effect of the decree for specific performance which we shall order in this action will be to require plaintiff to pay interest on the unpaid part of the purchase price during the time that has elapsed since the deed was tendered; and if the plaintiff complies with the decree, and pays the purchase price, her title to the land will take effect as of the date of the tender of the deed in April, 1903. It is therefore apparent that if the defendants have had the use of the land or part of it during all or part of the time since the spring of 1903, and that fact were not taken into consideration in framing the decree, the result would be that defendants would have the use of the land and interest on the purchase price also, and the plaintiff would suffer a corresponding detriment. The principles which govern the adjustment of the rights of the parties under the circumstances of this case, if the facts are as alleged in the counterclaim, are plain. If the plaintiff complies with the decree for specic performance, her title then acquired relates back to the time when she ought to have performed, namely, when the deed was tendered. Consequently, if, during any part of that time, the defendants have had the use of any part of the land, they must be regarded as trustees thereof. It was not obligatory upon them to assume that obligation. They were not required to farm the land pending the action, and hence can recover no compensation for any loss incurred in so doing. To the extent that they did so, they must be regarded as voluntary trustees, and, as such, liable to the plaintiff, either for the value of such use and occupation, or for the net profits which they have obtained from the occupation. The plaintiff has the right to elect which of the two measures of compensation she will adopt. Rev. Codes, section 4273; Berry v. Evendon (N. D.) 103 N. W. 748; Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855. If anything is found to be due to plaintiff for the use and occupation, or for profits, that sum should be applied in reduction of the cash payment on the purchase price, which the decree requires of the plaintiff. As we are unable to make this adjustment, by reason of the absence from the record of any evidence on the subject, we shall provide an opportunity to the plaintiff to have this matter adjusted by the district court before the decree is entered.

The judgment appealed from is reversed, and the cause remanded to the district court, and that court will enter a judgment

dismissing the plaintiff's cause of action on the merits, and decreeing in the usual form a specific performance of the contract. The cash payment required of plaintiff is $3,300, with interest at the rate of 8 per cent per annum from September 22, 1902, the date of the contract, to the day the money is paid to the defendants, or into court for them; but from this amount will be deducted such sum, if any, which it may be shown the plaintiff is entitled to, by reason of the use and occupation of the premises by defendants since April 30, 1903. The notes for the balance of the purchase price, aggregating $3,000, are to be for the several amounts, and secured on the respective tracts specified in said contract. They should be dated April 30, 1903, be payable on or before January 1, 1908, and bear interest from April 30, 1903, at the rate of 8 per cent per annum. The plaintiff should be allowed sixty days in which to pay the money and execute and deliver the notes and mortgages, after notice of the entry of the decree and deposit in court of the defendants' deed, offered in evidence as Exhibit 8, and abstract of title. The defendants will recover the taxable costs and disbursements of both courts. Instead of granting an ex parte order for judgment upon the receipt of the remittitur, in this case, the district court will require eight days' notice to the plaintiff of the application, and if the plaintiff shall make it appear that she claims any deduction should be made from the purchase price to be paid in cash by reason of the use of the premises by the defendant, then the district court will, by order, provide for the hearing and determination of that question, in accordance with the rule above stated, and stay proceedings on the remittitur for such reasonable time as may be required to determine the question. Each party to pay their or her own costs incurred on such hearing. All concur.