RUNNELLS v. PRUITT. (No. 7976.)

(Court of Civil Appeals of Texas. Dallas. May 25, 1918. Rehearing Denied June 29, 1918.)

1. VENDOR AND PURCHASER ⬅140—FURNISHING ABSTRACT.

Where land contract provides that abstract shall be furnished, but does not fix the time, the abstract is to be furnished within a reasonable time before the date fixed for performance of the contract.

2. VENDOR AND PURCHASER ⬅140 — FURNISHING ABSTRACT.

Where under a land contract dated June 11th, and setting the date for performance as

the following January 1st, the abstract of title was furnished July 1st following the date of the contract, it was furnished within a reasonable time.

3. VENDOR AND PURCHASER ⬅144(2)—TIME OF PERFECTING TITLE.

Generally, in the absence of agreement to the contrary, it is unimportant that the vendor's title is bad, or that the land is incumbered at the time the contract is made, if the contract is made in good faith and the vendor is prepared to convey the title guaranteed at the time set for performance.

4. VENDOR AND PURCHASER ⬅144(1) — DEFECTS IN ABSTRACT.

Where defects in title as shown by vendor's abstract were, upon return of the abstract with objections of purchaser's attorney, cured by securing deeds and releases, and mistakes of the abstracter were discovered by comparison with the records, and the corrections were noted unofficially on the abstract, and, before the date of performance of the land contract the abstract was returned to the purchaser's attorney, who refused to accept it as it was or agree to take the land if a new official abstract with the notations included and certified to was furnished, although admitting that the unofficial memoranda purported to cure objections to the title, a finding that the purchaser breached the contract was justified.

5. VENDOR AND PURCHASER ⬅330—DAMAGES FOR BREACH OF PURCHASE.

The measure of damages for the breach by the purchaser of a contract to convey and purchase land is the difference between the price the seller was to receive and the market value of the land at the date of the breach, plus interest from the date of such default.

6. MORTGAGES ⬅118—OBLIGATION SECURED —BREACH OF CONTRACT.

Where land contract expressly gave the purchaser the right of possession pending examination of the title, etc., and the purchaser to secure its performance gave a deed of trust on other land, such security on breach of the purchaser's contract could be subjected to satisfaction of the purchaser's damage and waste while in possession, since the right of possession given by the contract contained the implication, as a matter of law, that in case the purchaser refused to accept the land he would return it free of damage or waste.

7. DAMAGES ⬅80(1) — "LIQUIDATED DAMAGES."

Generally, if damages from breach of contract are certain and determinate, a sum named as damages for breach will not be treated as "liquidated damages," unless it bears such proportion to the actual damages as to raise the presumption it was arrived at by fair estimation of the parties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Liquidated Damages.]

8. DAMAGES ⬅79(5) — "LIQUIDATED DAMAGES."

Where a land contract provided for possession by the purchaser pending examination of title, etc., the disposition of rentals and crops, and the giving of security by the seller and purchaser for performance thereof, and, upon the purchaser's refusal to perform, damages from his waste and conversion of crops and failure to account for the seller's share of the crops and depreciation in value of the land could be made certain and determinate by proof, the seller's recovery for the breach was not limited to the sum named as security, but such sum would be treated as a penalty only.

Error from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by C. M. Pruitt against Jesse Runnells. Judgment for plaintiff, and defendant brings error. Affirmed.

Bumpass & Crumbaugh, of Terrell, for plaintiff in error. Adams & Stennis, of Dallas, for defendant in error.

RASBURY, J. Defendant in error sued plaintiff in error in the court below to recover damages alleged to be the consequence of the latter's breach of contract to purchase from defendant in error certain lands in Dallas county, and to foreclose deed of trust lien upon certain land, executed by plaintiff in error as security for the damages resulting from the breach of the contract. The damages alleged were the depreciation in value of the land, permitting Johnson grass to seed thereon, damage to the well on the premises, conversion of growing crops upon said land, consisting of corn, oats, and millet, as well as pecans and wood thereon, and for failure to account to defendant in error for his portion of cotton grown on said land. Plaintiff in error answered, admitting the execution of the contract and deed of trust and his refusal to accept the land, which he agreed to purchase, but asserting that his failure to accept the land was due to defendant in error's failure to furnish him a perfect abstract of the title to the land, as he agreed to do, denied the specific items of damage alleged, and the conversion of growing crops, etc. By agreement of the parties the issue of whether plaintiff in error was excused from accepting the land on the ground that defendant in error failed to furnish a perfect abstract of title to the property was submitted to the court. The issue of damages and the amount, if any, to be awarded were submitted to the jury for special verdict. The findings of both court and jury were for defendant in error, upon which judgment was entered for defendant in error for $3,809.30, such sum made up of the several items specified in the pleading. The lien of the trust deed was foreclosed, and the land ordered sold to pay the judgment. From such judgment the plaintiff in error has appealed.

The substance of the findings of the court on the issue referred to him by agreement was that defendant in error did, within a reasonable time, furnish plaintiff in error an abstract of title to the land for examination, which was examined by the latter's attorney, and to which objections of a material nature were made, but that before the time set for performance of the contract such defects were cured, and defendant in error offered to furnish a new abstract, showing perfect title, but that plaintiff in error refused to accept same. The court concluded as matter of law that the action detailed constituted a breach of the contract by plaintiff in error.

The effect of the first four assignments is to assert that the findings of the court are without support in the evidence, and that as a consequence the verdict of the jury on the issues referred to them is without basis. The facts deducible from the evidence tending to support the finding of the court are, in substance, these: On June 11, 1914, Pruitt and Runnells agreed in writing that Pruitt would sell and Runnells would purchase 445 acres of land belonging to the former upon the terms stated therein, the transaction to be concluded on or before January 1, 1915. Pruitt agreed to furnish Runnells "a perfect abstract of title" to the land. Runnells was to have possession of the land, and Pruitt's personal crop on the land. Pruitt was also to account to Runnells for the current rents. Runnells was to deposit in bank one-fourth of the proceeds from all cotton produced by tenants and one-half of the proceeds of that produced by his own efforts pending consummation of the sale and purchase. Each agreed to deposit in bank his check for $1,000 "for the carrying out" of the agreement. Upon failure of either to do that required by the contract the bank was to deliver both checks to the other. By supplemental contract of July 11, 1914, it was agreed that Pruitt should deposit with the bank his check for $2,000, in lieu of the one for $1,000, and that Runnells should execute a deed of trust upon certain lands as security in lieu of the $1,000 check. Pruitt deposited an additional $1,000 check, and Runnells executed the deed of trust, the provisions of which will be referred to at another place in this opinion, and took possession of the land and improvements about June 20, 1914. About July 1, 1914, Pruitt delivered Runnells an abstract of title to the land. About two weeks thereafter Runnells delivered it to Mr. A. H. Dashiell, his attorney, for examination. Dashiell commenced examining the title about August 1, 1914, the intervening time being spent by Runnells in arranging a fee. On September 15, 1914, in response to a letter from W. T. Jacobs & Co., agents for Pruitt, Dashiell wrote the latter that the title was quite defective, reciting some objections but warning that those pointed out were not all, nor intended to be a waiver of the others. Jacobs & Co. sought to employ Dashiell to cure the errors. The employment was declined. On October 3, 1914, Dashiell advised Pruitt and Jacobs that he declined to approve the title, since at most it was only a title by limitation. Pruitt, after being so advised, and subsequent to October 19, 1914, employed Adams & Stennis, attorneys, to perfect his title. Mr. R. L. Stennis spent approximately five weeks examining into the title as a whole, which was necessary for the reason that Mr. Dashiell had not pointed out his specific objections to the title. Adams & Stennis, on November 27, 1914, for the first time communicated with Dashiell, advising the latter that for Pruitt they had perfected the title, and that Pruitt would hold Runnells to a

compliance with his contract. On November 30, 1914, Dashiell replied in substance that, the title being such a hopeless condition, he had assumed the matter had been abandoned, since he had not been informed that any attempt was being made to perfect same, and whether it had been perfected he would be unable to determine until the abstract was returned to him. He also advised that the contract called for a perfect record title, and that Runnells would have accepted such title originally, had it been presented, and would yet do so if presented in time for Runnells to make his arrangements for the deal. December 4, 1914, Adams & Stennis again wrote Dashiell, claiming to have cured the material defects in the title, and suggesting that Dashiell point out any further objections. On December 5, 1914, Dashiell advised Adams & Stennis that if they would send him the abstract of title he would prepare formal written opinion upon the title, since while he had certain memoranda, made at the time he examined the title, he could not point the objections out without the abstract. Warning was given, however, that the request and offer were not to be considered a waiver of Pruitt's failure to furnish a perfect abstract of title in time for the sale to be consummated. December 8, 1914, Dashiell acknowledged receipt of the abstract, and stated that he would see Mr. Runnells and ascertain if he was willing to accept the land, if title be perfected by January 1, 1915, but not waiving the right, which he had exercised, to abrogate the contract when Pruitt failed to present a perfect abstract of title. On December 15, 1914, Dashiell furnished Adams & Stennis formal opinion, pointing out 22 specific objections to the title, from which he concluded, as formerly, that Pruitt's title was one by limitation which could not be accepted by Runnells, renewing his statement that his opinion was not a waiver of Pruitt's original failure to comply with his contract, and advising that possession of the premises would be abandoned January 1, 1915, and returning the abstract. December 28, 1914, Adams & Stennis wrote Dashiell, reviewing his objections, admitting some to be correct, claiming some to be errors of the abstracters, and furnishing certain pencil memoranda which, it was claimed, disclosed a perfect title as construed by the courts, and offering, if Dashiell was not satisfied with the pencil memoranda furnished, to furnish an entire new abstract of title, certifying to the correctness of the pencil memoranda. December 29, 1914, Dashiell advised Adams & Stennis that he was still of opinion that the title was one by limitation, but if presented at that late day with an abstract showing a perfect title, he would not advise Runnells to accept same. R. L. Stennis, after qualifying as an expert, testified upon trial that the deeds, etc., secured and corrections indicated by the pencil memoranda made by him in his opinion would have shown a perfect title. Dashiell, who also qualified as an expert, testified that the pencil memoranda made by Stennis upon the abstract returned to him purported to cure the objections made by him. Pruitt tendered Runnells a deed to the land within the time set for performance of the contract.

[1, 2] In order to ascertain whether the conclusion of the court that plaintiff in error's action in refusing to accept the land under the facts recited was a breach of the contract on his part, it will be necessary to briefly consider the duties of the respective parties in such cases in the light of the contract. In nearly every case the rights and duties of the parties vary according to the dissimilarities in the provisions of the given contract. In the contract under consideration no time was fixed as to when the abstract should be furnished. It merely provided that the abstract should be furnished. The rule in such cases is that the abstract shall be furnished for examination within a reasonable time before the date fixed for performance of the contract. 39 Cyc. 1520. The contract under discussion was dated June 11, 1914, the abstract was furnished July 1, 1914, and the date set for performance of the contract was January 1, 1915. This allowed six months for examination, obviously a reasonable time.

[3, 4] However, whether plaintiff in error was allowed a reasonable time in which to examine the abstract is not the real matter in dispute, and was not what the finding of the court that plaintiff in error breached the contract was based upon. What the court found was, in substance, that after the attorney for plaintiff in error had examined the abstract and pointed out the objections to the title they were in various ways cured, and an offer made, three days before the time set for performance of the contract, to furnish an abstract delineating such title as was contemplated by the contract, which, under all the circumstances, was a reasonable time before the time set for performance in which to furnish "a perfect abstract of title." Under all the facts recited, did plaintiff in error's refusal to accept the land constitute a breach of the contract? Generally, in the absence of agreement to the contrary, it is unimportant that the vendor's title is bad, or that the land is incumbered at the time the contract is made, if it is made in good faith and he is prepared to convey the title guaranteed at the time set for performance. 39 Cyc. 1259; Mitchell v. Allen, 69 Tex. 70, 6 S. W. 745. As a consequence, the contention of plaintiff in error that he was entitled to repudiate the contract before the date set for performance, if before that time the title was defective, is unsound. The cases seem to go even further where time is not of the essence of the contract. "The established principle is that where a contract is entered into in good faith, and time is not of its essence, and is not made material by the offer to fulfill

by the other party and a request for a conveyance, the vendor will be allowed reasonable time and opportunity to perfect his title, however defective it may have been at the time of the agreement. All that is necessary is that the plaintiff is able to make the stipulated title at the time when by the terms of the agreement, or by the equities of the particular case, he is required to make the conveyance to entitle him to the consideration." Andrew v. Babcock, 63 Conn. 109, 26 Atl. 715; Arnett v. Smith, 11 N. D. 55, 88 N. W. 1037 and cc. In the present case plaintiff in error went into immediate possession of the land and used and cultivated same for a period of more than 6½ months. Obviously time was not of the essence of the contract to convey, since possession was all that immediate conveyance would have conferred. While the authorities cited indicate that the vendor, the equities being sufficient, would have a reasonable time to perfect his title after the defects were pointed out, even though it extended beyond the time set for performance, it is not disputed that in the present case the defendant in error claimed to have perfected his title before the day set for performance, and was ready to furnish new abstract showing such state of title, if plaintiff in error would accept the land. This plaintiff in error declined to do. His declination cannot be put upon the ground that the time was too short in which to examine the title, for his attorney had done that. The only additional labor involved was to determine whether the new abstract in fact disclosed that the objections had been cured or obviated. As a consequence the only inquiry is whether the evidence will sustain the finding of the court that when defendant in error offered to furnish plaintiff in error a new and corrected abstract the former had a perfect title to the land; that is to say, one free of material defects. We have recited the facts tending to support the findings of the court. Summarized briefly they disclose that the material defects in and objections to the title were cured by securing deeds and releases. The other errors were largely mistakes of the abstracter, as shown by comparison of the abstract entries with the county record. These corrections were noted upon the abstract and returned to Dashiell. He was asked ,to accept the old abstract with the unofficial notations or to agree to take the land if an entirely new one, with the notations included and certified to, was furnished. This he declined to do. He admitted that the memoranda purported to cure the objection, which was but to say that the title was the one contemplated if the notations were correct. Both Dashiell and Stennis were experts in the examination of titles and qualified to pass upon same. The facts so appearing, we conclude we would not be justified in holding they are insufficient to support the trial court's finding.

[5, 6] As appears from our statement of the case, the contract specifically provides that the plaintiff in error shall, in the manner provided in the contract account for the cotton then growing on the land when marketed. The contract does not in terms covenant against conversion of other growing crops on the land or waste. Verdict and judgment was not only for the value of the cotton not accounted for, but for items of conversion and waste as well. The deed of trust referred to in our statement was held to be security for the performance of the contract by the trial court, and in foreclosing the lien given thereby it was foreclosed in payment of all items of damage. Upon the premises recited plaintiff in error contends that the security is available only for the depreciation in value of the land and the items particularly specified in the contract. The measure of damages for the breach by the purchaser of a contract to convey and purchase land is the difference between the price the seller was to receive and the market value of the land at the date of the breach, plus interest from the date of such default. Kempner v. Heidenheimer, 65 Tex. 587; Monroe v. South, 64 S. W. 1014; Smith v. Lander, 89 S. W. 19. In the absence of anything in such a contract evidencing an intention to include elements of damage other than those which would be the natural consequence of its breach, the security given for its performance could not, in our opinion, be subjected to the satisfaction of such other damages, though recoverable. As we have shown, the contract to convey and purchase in its essentials provides the price to be paid for the land, the manner of its payment, the rate of interest on deferred payments, the disposition of rentals and growing cotton crops, the furnishing of an abstract of title, the right of possession by the purchaser, and the giving of security by the seller and purchaser for the performance thereof. The security given was a deed of trust. The recitations in that instrument are involved, vague, and awkward, but, fairly interpreted, indicate an intention to fix a lien upon the land described for $2,000, to secure the performance on the part of plaintiff in error of the contract. There is in the contract no express provision covering the conversion of growing crops or waste. There is, however, contained therein the right of possession. Such possession, as matter of law, contemplated that in the event the purchaser refused to accept the land he would return it to the seller free of damage or waste. That duty clearly arises by implication from the right of possession. Such being the purchaser's duty, and it appearing from the evidence that both damage and waste were committed, such additional elements would be recoverable, because the natural consequence of his failure to surrender the premises as received. Such liability, in our opinion, arises, not upon refusal to purchase,

but because of wrongful acts while in possession of the premises.

[7, 8] Finally, it is contended that the parties by their contract fixed the amount of their damages, and, as a consequence, neither party was entitled to recover a greater sum. The contention presents the oft-recurring question of whether the sum stipulated to be paid upon a breach of contract is a penalty or liquidated damages. The general rule is that if the damages resulting from a breach of the contract are certain and determinate, courts will not treat the sum named as liquidated damages, unless it bears such proportion to the actual damages as to raise the presumption it was arrived at by fair estimation of the parties. Collier v. Betterton, 87 Tex. 440, 29 S. W. 467. Where, under the rule stated, the sum named is held to be a penalty, that is, where the damages are certain and determinate, the amount of recovery is not controlled by the sum named, but is confined only to whatever sum the proof shows the actual damages are. Palestine Ice, Fuel & Gin Co. v. Walter Connally & Co., 148 S. W. 1109. Under the rules cited it follows, we think, that the sum named in the contract under discussion was a penalty, since it is clear that under the decisions of our courts the damages recovered in this case could be made certain and determinate by proof. The depreciation in value of lands, the value of growing crops of cotton, and other farm products can easily be shown.

Finding no reversible error in the record, the judgment is affirmed.