THE STATE OF NORTH DAKOTA, Doing Business as the Home Building Association of North Dakota, Appellant, v. GEORGE E. WALLACE, Respondent.

(194 N. W. 710.)

**Building and loan association — Home Builder's Act authorizes construction of homes for members of Home Buyers' League who have assumed prescribed contingent liability to state.**

1. Section 6 of chapter 150 of the Session Laws of 1919, known as the Home Builders' Act, is construed and *held* to authorize the construction of homes for members of the Home Buyers' League, who have assumed the prescribed contingent liability to the state.

**Building and loan associations — in application of limitation under Home Builders' Act, house and lot considered as real property and as entity.**

2. The same section is further construed to place a limitation of $5,000 upon the price of a home to be built for such a member, and, in applying the limitation, the house and lot is considered as real property and as an entity.

**Specific performance — alternative relief under invalid contract under Home Builders' Law granted under equitable principles.**

3. Acting pursuant to a contract that was invalid by reason of the applicant not being a member of the Home Buyers' League and by reason of the price being in excess of that authorized by the statute, the state built a house for a purchaser, purporting to act under the authority of the Home Builders' Law, and the purchaser went into possession and made certain advancements and im-

provements. It is held the contract will not be specifically enforced, but in an action to enforce it, equitable considerations will be applied and an alternative judgment directed, giving the purchaser an option to obtain a return of advancements made with interest or to require the state to convey upon the payment or securing by him of the reasonable value of the property.

Opinion filed July 18, 1923.

Building and Loan Associations, 9 C. J. § 8 p. 924 n. 81 New.

Appeal from the District Court of Burleigh County, *Pugh,* J.
Reversed and remanded.

*George F. Shafer,* Attorney General, for appellant.

"The contract was too indefinite in its terms to authorize its specific performance. The appellant, on his part, contends that the excavation of the cellar and the moving of the building further over onto the lot was sufficient part performance to take the agreement out of the statute, and that plaintiff's default was assented to by the defendants, and that the agreement is sufficiently specific to be enforced by a court of equity. The rule applicable to the enforcement of parol agreements is that the agreement must be clear and definite as to all the terms of the same. Judge Storey, in his work on Equity Jurisprudence, states the rule as follows: 'But, in order to take a case out of the statute upon the ground of part performance of a parol contract, it is not only indispensable that the acts done should be clear and definite, and referable exclusively to the contract, but the contract should also be established by competent proofs to be clear, definite, and unequivocal in all its terms. It the terms are uncertain or ambiguous, or not made out by satisfactory proofs, a specific performance will not (as, indeed, upon principle it should not) be decreed. The reason would seem obvious enough, for a court of equity ought not to act on a conjecture; and one of the most important objects of the statute was to prevent the introduction of loose and indeterminate proofs of what ought to be established by solemn written contracts." Johnson v. Plotner (S. D.) 87 N. W. 926.

"The agreement is deficient, however, in a very important particular. Courts will not specifically enforce oral contracts to convey real estate, the material terms of which do not clearly appear, . . . will not make contracts for the parties. The agreement here was for the con-

veyance of land at the price of $1,153.50, with interest at the rate of 12 per cent per annum from August 26th, 1871, five hundred to be paid within one year, upon which the conveyance was to be made, and a mortgage to be given for the remainder of the purchase money. The parties agreed that credit should be given for the remainder, but the terms of such credit, whether it was to be for one, five, or ten years, do not appear. That was evidently left for future negotiations." Williams v. Stewart, 25 Minn. 516.

*William Langer,* for respondent.

An action for the recovery of money only, though tried by the court on stipulation, is not triable de novo on appeal. American Case & Register Co. v. Boyd, 22 N. D. 166.

. The doctrine of estoppel requires of a party consistency of conduct, when inconsistency would work substantial injury to the other party. So where a person has acted or refrained from acting in a particular manner upon the request of another, the latter is estopped to take any position inconsistent with his own request or advice to the person so advised to act. 21 C. J. 1204; Siefert v. Lanz, 29 N. D. 139.

A county auditor is precluded from urging irregularities in sending two sets of election supplies and only one ballot box to a combined precinct in an election in which he is a candidate for re-election, where he was the person through whom such supplies and ballot boxes were sent by the board of county commissioners. Fuerts v. Semmler, 28 N. D. 411.

A person who as a petitioner has invoked the law to establish a drainage ditch cannot, after the establishment thereof, object to the unconstitutionality of the law. De Noma v. Murphy, 28 S. D. 372, 133 N. W. 703.

. A contract, though unauthorized, but which involves no moral turpitude, and is not expressly forbidden by statute, will be enforced if justice requires it. 13 C. J. p. 504, § 447.

### Statement.

BIRDZELL, J. This is an appeal from a judgment in favor of the defendant. The action was brought by the plaintiff to recover an unpaid balance which was claimed to be owing by the defendant on ac-

count of the construction of a house for the latter by the former. The defendant denies the contract alleged in the complaint and pleads another contract under which he claims that he is entitled to a contract for deed without the present payment of the money which plaintiff seeks to recover. A brief statement of the pleadings will best serve to convey an idea of the issues. The complaint alleges that the plaintiff is an agency of the state, organized under the provisions of chapter 150, Session Laws of 1919, as amended by chapter 39 of the Laws of the Special Session of 1919, engaged in the enterprise of providing homes for residents of the state; that on or about September 1, 1920, the defendant made application to the plaintiff association for the purchase and construction of a home under the provisions of the law; that it was agreed the plaintiff, upon completion of the house and upon receipt of the cash payment of twenty per cent of the total selling price, would convey the property to the defendant by deed or by contract for deed as provided in § 12 of the act; that the application was accepted and the dwelling house substantially completed on or about June 1, 1921, and possession delivered to the defendant, who has since retained possession; that the cost of the home, including the lot and equipment with various extras and alterations ordered by the defendant and furnished at his instance, was $11,720.45, which sum the defendant agreed to pay plaintiff, and that the home was of the reasonable value of $11,720.45; that no part of the above sum has been paid by the defendant, except certain instalments amounting to $2,900; that defendant has neglected to pay the balance or to make settlement in the manner provided by law; that there remained owing the sum of $8,820.45 with interest from November 1, 1921 at the legal rate; that the plaintiff was willing and able to convey the property to the defendant or execute a contract for deed upon receipt of the balance alleged to be due the plaintiff or upon the execution of a settlement. The prayer for judgment is for the recovery of the balance.

The answer takes issue with the allegations respecting the cost of the home and the contract to pay the cost, and it affirmatively alleges a contract to construct the dwelling at a cost of not to exceed $5,300; that thereafter certain extras were furnished by the plaintiff at an agreed price of $520. It alleges the payment of instalments differing in time of payment but not in amount from those alleged in the complaint;

that, on account of these payments, there is no money due the plaintiff from the defendant under the agreement. It further alleges a breach of contract by the plaintiff in the failure to furnish certain electric fixtures. The prayer for judgment is that the plaintiff's action be dismissed and that defendant be credited with $99.95 with interest on account of the failure to furnish electric fixtures and that plaintiff be required to execute a written contract for deed obligating it to convey the property to the defendant at the agreed price of $5,820 and that defendant receive credit on the contract for-$2,900.

The trial court found that the plaintiff association had accepted the application of the defendant; that the defendant bought the lot described in the complaint and had the deed run directly to the state, doing business as the Home Building Association; that there existed an oral agreement between the plaintiff, through its manager, Robert Blakemore, and superintendent of construction, James Baker, that the plaintiff would build a home for the defendant according to certain plans and specifications at the agreed price of $5,300; that no written contract had ever been made; that, in reliance on the oral contract, the lot was conveyed to the plaintiff at a valuation of $900; that extras had been furnished at an agreed price of $520; that the home was completed on June 1, 1921 and that plaintiff took possession at that time; that the plaintiff had paid on the contract $2,900 in instalments at certain times specified in the findings; that the plaintiff had failed to furnish electric light fixtures; that the same had been furnished by the defendant requiring the expenditure of $99.95. Upon these findings the defendant was given a judgment that the plaintiff execute a contract for deed to be signed by proper officers, obligating it to convey the property to the defendant upon the payment of $5,820, on which there was credited $2,999.95, the balance to draw interest at 5 per cent, principal and interest to be paid at the rate of $28.65 per month. Upon full payment the plaintiff is required to execute a warranty deed.

The specifications of error upon this appeal challenge principally the findings of fact with reference to the existence of an oral contract and attack the holding that the oral contract, if it did exist, was a valid and lawful contract and that the defendant was entitled to specific performance of the same.

When the appeal was first presented to this court it was found, upon

examining the record, that evidence was lacking as to the reasonable
value of the home at the time possession was taken by the defendant, the
reasonable rental value, the value of improvements made subsequent
to the assumption of possession and as to whether or not the defendant
was a member of a Home Buyers' League, and, if so, the extent of
obligation due the association from the league. The case was remanded
to the district court for the taking of additional evidence on these
matters and for the making of appropriate findings, conclusions, order
for judgment and judgment in the light of the further testimony.
After the taking of the additional evidence, modified findings and
conclusions were filed, under which the judgment was modified to the
extent of requiring the defendant to pay, in all, $6,220 instead of
$5,820 as originally decreed, but no findings are made on the evidence
touching the matters referred to in the order of remand.

## Decision.

Upon a consideration of the testimony in the record, this court is
not disposed to disturb the finding of the district court that there was
an oral contract, but we are of the opinion that a proper judgment in
this case is not dependent upon the existence or nonexistence of the
contract alleged and proved by the defendant. Had this court been of
the opinion that a proper judgment could be entered on the record
made, there would have been no necessity to remand the case for the
additional evidence indicated in the order. The additional brief for the
respondent, filed on the return of the amplified record, is devoted large-
ly to an argument which seeks to demonstrate that this court was with-
out authority to require the additional evidence. It is said that the
action is for the recovery of money only and is consequently triable by
a jury; that the plaintiff, having sued on a contract to recover a definite
sum, and the defendant, having relied on a different contract to pay a
specific sum, the plaintiff is precluded from recovering any sum other
than that which the jury found to be owing; that neither the reason-
able value, nor the reasonable rental value, nor the reasonable value of
improvements, nor the question as to whether the defendant is a mem-
ber of a home buyers' league, were within the issues framed by the
pleadings. These contentions, for the most part, depend for soundness

upon the consideration as to whether this is in reality a civil action seeking equitable relief or an ordinary action for compensatory damages to be assessed in a money judgment. The relief sought by the plaintiff is clearly equitable in its nature. The attempt is to recover the purchase price and not damages for breach of a contract to purchase. It is elementary that the right of the vendor to specific performance is reciprocal with that of the purchaser and that the remedy of specific performance is mutual. While the complaint in this action clearly characterizes the action as being a vendor's action for specific performance, the relief sought by the defendant likewise invokes chancery powers. He asks for specific performance in the shape of the execution of a conveyance or, more accurately, of a contract to convey. So, even if the issues tendered by the complaint were triable to a jury, under well-established practice the equitable issue submitted by the defendant must first be disposed of by the court. Cotton v. Butterfield, 14 N. D. 465, 105 N. W. 236. Furthermore, the judgment obtained by the defendant below granted equitable relief, and it is this judgment that we are asked to review. If the findings of fact do not warrant the legal conclusions reflected in the judgment, and if these conclusions are assigned as error, as they obviously are, this court cannot affirm the judgment, but must reverse it. Then, if equitable considerations are not to be applied, as respondent urges they should not be, the argument defeats its own ends because the reversal of the judgment would leave the title to the property in the plaintiff and also a substantial portion of the purchase price.

Being of the opinion that the present action is one properly triable to the court without a jury, we pass to a consideration of the specifications of error. Specifications 8 and 9 particularly challenge the holding of the trial court that the oral contract, specified and described in the findings of fact, was a valid and lawful contract and that the defendant was, as a matter of law, entitled to a decree of specific performance thereof against the plaintiff. We deem these specifications to be well founded for reasons which may be briefly stated. The law governing relations of the parties, it is agreed, is chapter 150 of the Session Laws of 1919.

Section 6 of chapter 150 authorizes the funds available to the industrial commission through the sale of bonds, appropriations, deposits

received by the Association, or from payments made by purchasers, to be used under proper regulations in building or purchasing homes for members of the "Home Buyers' League, as such Leagues are hereinafter defined." It further provides "No home shall be built, or purchased and sold, at a price to exceed five thousand dollars, except in case of a farm home, in which case the selling price shall not exceed ten thousand dollars."

Section 8 provides that any person may open a home buying account with the association by applying in person, by mail or through a Home Buyers' League, trade union, woman's club or any other recognized industrial, social or civic body. And § 10 says that ten or more depositors in the association may form themselves into a local body to be known as a Home Buyers' League and that no person shall become a member of a Home Buyers' League without the written consent of all the other members.

Section 11 provides for the election of a secretary-treasurer, by each Home Buyers' League, who shall be its executive officer.

Section 12 provides that whenever a member of a Home Buyers' League shall have deposited a sum equal to 20 per cent of the total selling price of a home or farm home, the association shall, upon his application, purchase or build such home or farm home or convey it to him upon a cash payment of 20 per cent, etc., and § 13 makes each member of every Home Buyers' League jointly and severally liable for all contracts, debts and obligations due the association from his league, to the extent of 15 per cent of the price at which his home was sold to him.

From these portions of the act, we are of the opinion that two propositions are clear; first, that, to use the language of the legislature, "No home shall be built, or purchased and sold, at a price to exceed $5,000, except in case of a farm home, in which the selling price shall not exceed $10,000," and that the homes are to be built for members of home buyers' leagues only, who in turn are under a contingent liability over to the state to the extent of 15 per cent of the price at which their respective homes were sold to them. Whether these requirements, or any of them, are reasonable or unreasonable, workable or unworkable, are manifestly not questions for judicial consideration. They are the positive expressions of the legislature whose judgment must be taken as

final in such matters. It stands admitted on the record in this case that the contract price of the home in the case at bar was $5,300, but it is argued that, inasmuch as the defendant purchased the lot and put the title thereto in the state, $900, or the purchase price of the lot, must be subtracted from the contract price. We find no warrant in the statute for such a procedure. The statute deals with a home and obviously the "home" is not nebulous but immovable with a foundation in real estate which classifies it in law as real property. The law contemplates that the Industrial Commission shall acquire suitable tracts and that the tract and house shall be conveyed together as an entity. The home clearly includes both. If, for purposes of the limitation, the lot be considered as owned by the purchaser, the association had no authority whatever to contract to construct a house upon it. There is no evidence that the legislature intended to impose one restriction as to those who did not own lots and another as to those who did or who could acquire them. Rather it appears the intention was to assist those of modest means to acquire modest homes. The act does not create a loaning system but outlines a home building scheme.

It further stands admitted on the record that the defendant is not a member of a Home Buyers' League and thus there is denied to the state the degree of liability which the legislature saw fit to impose upon members of such leagues who would purchase homes. One who seeks the benefit of a statute of this character, must likewise assume the burdens imposed for public protection. Whether these obligations be real or fanciful is not a matter with which we are concerned. The requirement is one which we cannot characterize as negligible.

On the other hand, the plaintiff cannot recover of the defendant the cost to it of the building erected for him. On the argument such a right was disclaimed.

The situation then, in which this case rests, is this: The plaintiff has title to a lot by the voluntary conveyance of the defendant, upon which it has, with his consent, erected a house under a verbal contract according to which neither the state nor the defendant were bound. The defendant is in possession of that house; he has advanced certain moneys to the state; he has made certain improvements upon the property and paid taxes; he is not entitled to a conveyance of the house upon the

payment of any remainder due or to be paid according to the terms of the contract for the reason that he dealt with public officers with the knowledge of the limitations upon their authority and in disregard thereof. From the very fact that these limitations are prescribed and from the fact that their evident purpose was public protection, the contract must be annulled. On the other hand, the state is in no position to charge to the defendant any share of the costs that might be due to maladministration, if there be such costs. We cannot assume that the defendant is responsible for such conditions, if they exist, or did exist, to any greater extent than any one of his fellow citizens. This being the situation, the defendant should not lose and cannot equitably, in our opinion, be required to lose the moneys he has advanced in this enterprise. Hence, the defendant's money and the value of the property which he turned over to the state and which the state has subsequently improved, should be returned to him with interest at the rate fixed pursuant to § 9 of chapter 150 of the Session Laws of 1919, subject to a deduction for a reasonable rental of the property during the time it has been in his possession. In estimating the amount of his advances, there must be taken into consideration the value of the improvements (not necessarily their cost to him) which he in good faith has placed upon the property and the taxes he has paid. This, in our judgment, measures the obligation of the state. On the other hand, if the defendant is desirous of securing title to the property, which in good faith he has attempted to acquire, we think provision should be made in the judgment to this end and that the provision should be that the property be conveyed to him upon an undertaking, supported by security satisfactory to the state, that he will pay the reasonable value thereof, such reasonable value to be determined as of the time he entered into possession, and that the decree should make reasonable provision for deferred payments at the option of the defendant.

The judgment appealed from is reversed and the case is remanded to the district court with directions to enter a decree not inconsistent with the conclusions herein expressed,—the reasonable values, reasonable rentals and the value of improvements to be found in accordance with the evidence herein taken and upon which no findings have as yet been made.

: BRONSON, Ch. J., and CHRISTIANSON and NUESSLE, JJ., and COOLEY, Dist. J., concur.

JOHNSON, J., being disqualified did not participate; Honorable CHAS. M. COOLEY, Judge of the First Judicial District, sitting in his stead.